IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| KEVIN D. WICKSTROM ET. AL., § | |
| § | |
| v. § | |
| § | EP-22-CV-315-DB |
| AIRLINE PILOTS ASSOCIATION, § | |
| INTERNATIONAL. § | |

## ORDER ON DEFENDANT'S MOTION TO TRANSFER VENUE

On this day, the Court considered Defendant Airline Pilots Association, International's ("the Union") "Contested Motion to Transfer Venue [ ]" ("Motion"). ECF No. 19. Plaintiffs Kevin D. Wickstrom, Robert D. Williamson, Erik W. Wichmann, James R. Breitsprecher, Tony H. McKenzie, Leigh Smith, Jon A. Sterling, Forace Hogan, Christopher P. Gates, and John Ellis ("the Pilots") filed a timely response, and the Union filed a timely reply. ECF Nos. 25 and 27. In the interest of justice and for the convenience of the parties, the Court grants the Union's Motion and transfers the case to the Northern District of Illinois.

## BACKGROUND

Ten United Airlines pilots claim that their Union failed to fairly represent their interests when United planned and imposed a mandatory vaccination program for its pilots. Complaint ("Compl.") 2–4, ECF No. 1. The Pilots reside all over the country, with three residing in Colorado and one residing in El Paso County, Texas. *Id.*

The Union has its principal place of business in McLean, Virginia, "and was at all relative times the certified collective bargaining representative under the Railway Labor Act for [the Pilots]." *Id.* at 4. In 2021, United leadership indicated that it expected to implement mandatory workplace vaccinations. *Id.* at 6. The Union did not poll its members about whether it should oppose mandatory vaccinations and took the stance that the mandatory vaccinations were

contractually permissible. *Id.* at 6–7. The Pilots also allege that the Union "via a Letter of Agreement (LOA 21-02) assisted United management in instituting a two-tier system limiting compensation for unvaccinated pilots two months later, without submitting the LOA to United pilot membership as required." *Id.* at 7. The Pilots argue that the Union was hostile to union members who were unvaccinated, discouraged members from filing grievances in opposition to the vaccine mandate, and did not object to United's reasonable accommodation process ("RAP") for vaccine objectors. *Id.* at 8, 10.

The Court now examines the Union's Motion to transfer the case from the Western District of Texas to the Northern District of Illinois under 28 U.S.C. § 1404. ECF. No. 19. First, the Court will consider whether venue is appropriate in the Northern District of Illinois. Then the Court will weigh the *Volkswagen* public and private interest factors to determine whether the Northern District of Illinois is a "clearly more convenient" venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*").

## LEGAL STANDARD

Unless otherwise provided by law, in a civil action venue is permissible "only in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. §1391(b). When multiple venues are permissible, in the interest of justice and for the convenience of the parties, a district court may transfer a case to any other district or division where it could have been brought. 28 U.S.C. §1404(a) ("§ 1404(a)").

2

District courts have "broad discretion" to transfer a case pursuant to § 1404(a). *Volkswagen II*, 545 F.3d at 311. "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Id.* at 312. If venue is proper in the destination venue, the moving party bears the burden of demonstrating that good cause exists to transfer the case for convenience purposes. *Id.* at 315.

In deciding whether to transfer, courts consider various private and public interest factors. *Id.* The private factors considered are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public factors considered are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* These factors are "not necessarily exhaustive or exclusive" and "none . . . [is] dispositive." *Id.*

## ANALYSIS

First, the Court addresses the question of personal jurisdiction. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979) (A court usually considers jurisdictional challenges before determining whether venue is proper). The Union asserts that the Court should dismiss the case because it lacks personal jurisdiction over it. Mot. to Dismiss for Lack of Jurisdiction, ECF No. 20.[1] However, the Court need not resolve this claim because the Fifth

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

Circuit has "construed the discretionary transfer language of 28 U.S.C. §1404(a) to permit transfer . . . even if no personal jurisdiction existed in the transferring court." *Aguacate Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978). Thus, this Court will analyze Defendant's Motion to Transfer Venue without addressing whether the Court can exercise personal jurisdiction over them.

The Union proposes that the Court transfer this action to the Northern District of Illinois. Mot. 6, ECF No. 19. The Pilots object to transferring the case, arguing that it should remain in the Western District of Texas. Plaintiff's Response ("Resp.") 4–6, ECF No. 25.

Venus is proper in a judicial district where a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Both parties argue for their respective venues under this "substantial part of the events" prong of §1391(b). *See* ECF Nos. 19, 25. First, the Court will examine the acts or omissions underlying the Pilots' claims, and second it will consider whether substantial events material to those claims occurred in the Northern District of Illinois.

### I. Venue is Proper in the Northern District of Illinois because a Substantial Part of the Events and Omissions Underlying the Pilots' Claim Occurred in that District.

The United pilots allege that the Union failed to fairly represent them during a period of changes to United Airline's pilot vaccination policies. Compl. 4, 12–13, ECF No. 1. The Pilots allege that the Union failed to discuss the vaccine mandate with the Pilots, entered into a letter of Agreement ("LOA 21-02") with United that limited compensation for unvaccinated pilots, failed to challenge United's requirement that employees justify their request for vaccine exemption, and later failed to object to United's reasonable accommodation process ("RAP") for vaccine objectors. *Id.* at 6–8. In addition, the Pilots claim that not only did the Union "fail to challenge the involuntary vaccination program . . . but [it] also attempted to discourage its members

4

from filing any grievances against the program." *Id.* at 4.

Defendants argue that many of the events and omissions that the Pilots complain of took place in Chicago and Rosemont, both of which are in the Northern District of Illinois.[2] For example, "LOA 21–02 was negotiated and signed in the Northern District of Illinois, and United and [the Union] administered the LOA from that district, including [the Union's] decisions whether to file grievances." Mot. 7, ECF No. 19; *see also* Schleder Decl. ¶ 9. Additionally, to the extent that the Union was involved in the grievance procedures—mainly by ultimately deciding to not support the Pilots' grievances—the "in-person activities in connection with [the] grievance appeals and Grievance Review Panel proceedings took place primarily at [the Union's] Rosemont, IL office." Mot. 8–9; Schleder Decl. ¶ 15.j-k. "More generally, [the Union's] decisions and actions concerning the matters challenged by Plaintiffs (including the grievances, communications, and the RAP) occurred primarily from [the Union's] Rosemont office." Mot. 9; Schleder Decl. ¶ 10–12. The Pilots do not contest that these negotiations and decisions were made in the Northern District of Illinois.

Because many of the acts and omissions central to the Pilots' complaint took place in the Northern District of Illinois, venue is proper there under 28 U.S.C. § 1391(b)(2).

## II. The Private and Public Convenience Factors

The Pilots argue that their choice of venue is entitled to deference. Resp. 4–5, ECF No. 25 (citing *Vasquez v. El Paso II Enterprises, LLC*, 912 F. Supp. 2d 445, 447 (W.D. Tex. 2012) (internal citations omitted)). This is true insofar as the transferee venue is not "clearly more convenient" than the Western District of Texas. *Volkswagen II*, 545 F.3d at 315. "When the movant demonstrates that the transferee venue is clearly more convenient, however, it has

---

2 About the Northern District of Illinois, https://www.ilnd.uscourts.gov/Pages.aspx?NhWs0xTgfmuGF/mJVvb72w== (last visited April 3, 2023).

shown good cause and the district court should therefore grant the transfer." *Id.* In deciding whether to transfer, courts consider various private and public interest factors. *Id.*

### a. Private Factors

The private factors that courts consider are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The Court finds the first three factors relevant in this case, so it will consider them in turn.

### i. The relative ease of access to sources of proof favors transfer.

Under this factor, the court "looks to where documentary evidence, such as documents and physical evidence, is stored." *Voxer, Inc. v. Facebook, Inc.*, No. 6:20-CV-00011-ADA, 2020 WL 3416012, at *2 (W.D. Tex. June 22, 2020).

The Union argues that both parties "maintain documents related to contract negotiations, the pertinent grievance proceedings, personnel records, and other documents critical to this action in their respective facilities located in the Northern District of Illinois." Mot. 18–19, ECF No. 19. The Pilots respond that since the Union's headquarters are located in McLean, Virginia, "it is logical to infer that the relevant documents (and particularly the company officials charged with producing them) and other sources of proof in this matter are located in Virginia." Resp. 6, ECF No. 25.

The Union provided a declaration by an employee with personal knowledge of the negotiations who asserted that "[the Union's] records generated . . . in connection with the fulfillment of [the Union's] duties to United pilots . . . are [ ] primarily stored at [the Union's] office in Rosemont, IL." Schleder Dec. ¶ 5. The Pilots do not provide proof that any relevant

6

documentary evidence is located in either Virginia or in the Western District of Texas. *See* ECF No. 25. The Court finds that it will be easier to access sources of proof in the Northern District of Illinois than in the Western District of Texas and thus this factor favors transfer.

### ii. The availability of compulsory process to secure the attendance of witnesses is neutral.

This factor examines the extent to which any non-party witnesses would be subject to subpoenas in one proposed venue versus the other. *Volkswagen II*, 545 F.3d at 316. The Union argues that United witnesses who would testify about its negotiations with the union would be subject to subpoenas in the Northern District of Illinois but not in the Western District of Texas. Mot. 18–19, ECF No. 19. The Pilots do not contest this but instead argue that they "do not intend to depose or call any United-affiliated witnesses as part of their case." Resp. 7, ECF No. 25. The Union counters that it is difficult to imagine the Pilots refraining from deposing or calling United witnesses in a case that alleges collusion between United and the Union. Reply 3, ECF No 27; Compl. 13, ECF No. 1. The Court agrees. However, the Court will assume that the Pilots will not call United witnesses and thus finds this factor neutral in its analysis.

### iii. The cost of attendance for willing witnesses is neutral.

"While the convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue, it is the convenience of non-party witnesses which is accorded the most weight." *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *3 (W.D. Tex. Mar. 23, 2010) (internal citations omitted). Here, the Union argues that this convenience factor strongly favors transfer and provides a list of specific witnesses, from both the Union and United, and the issues that they may testify about that are relevant to this case. Mot. 11–13, 19, ECF No. 19; Schleder Dec. 8–10. Most of the witnesses who reside in Chicago are United employees. Schleder Dec. 8–10. The

7

Pilots assert that "the key witnesses in this matter are employees of [the Union]," not United, and that they have "no intention to call [United] witnesses." Resp. 10, ECF No. 24. Thus, the Court finds this factor neutral in its analysis.

### b. Public Factors

The public factors that courts examine are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315. The parties either do not analyze the last two factors or they find them neutral. Thus, the Court will only analyze the first two factors.

#### i. The administrative difficulties flowing from court congestion favor transfer.

"This factor concerns whether there is an appreciable difference in docket congestion between the two forums." *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-CV-00108-ADA, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). The Union argues that court congestion favors transfer to the Northern District of Illinois because the Judicial Conference has declared a judicial emergency in the Western District of Texas. Mot. 21, ECF No. 19. The district has 850 weighted filings per judgeship, the second highest of any district court. *Id.*; *see* U.S. Courts, Judicial Emergencies, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last visited March 29, 2023). In addition, the El Paso Division specifically has the second largest criminal docket of the entire district, which affects the congestion of the docket as a whole. *See* United States District Court Western District of Texas 2022 Fiscal Year Statistical Report, https://www.txwd.uscourts.gov/wp-content/uploads/District%20Statistics/2021/Fiscal%20Year%20Statistics%20-%202021.pdf (last

8

visited March 29, 2023).

The Pilots, on the other hand, argue that this factor weighs against transfer because the median time from filing to trial in a civil matter is significantly greater in the Northern District of Illinois than the Western District of Texas—53.5 months compared to 29.5 months. *See* U.S. District Court — Judicial Caseload Profiles, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2022.pdf (last visited March 29, 2023). Courts have noted that the time to trial factor is the "most speculative." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). A better metric is the median time from filing to disposition, which is 6.9 months in the Northern District of Illinois and 7.9 months in the Western District of Texas. *See* U.S. District Court — Judicial Caseload Profiles, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2022.pdf (last visited March 29, 2023). Here, where the difference between the median time from filing to disposition of a civil case is negligible, the Court does not place much weight on time to trial statistics because less than 1% of federal civil cases reach trial. *See* U.S. District Courts – Civil Federal Judicial Caseload Statistics, Table C-4 (Mar. 31, 2022), https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2022.

The Court finds that the judicial emergency and large criminal docket in the Western District of Texas weighs in favor of transfer.

### ii. The local interest in having localized interests decided at home favors transfer.

"This public interest factor considers whether the dispute at issue has a closer factual connection with the transferee or the transferor venue." *Qualls v. Prewett Enterprises, Inc.*, 594 F. Supp. 3d 813, 825 (S.D. Tex. 2022) (internal citations omitted). "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Id.*

9

The Union argues that this factor weighs in favor of transfer for the reasons outlined in Part I—the material events underlying this suit occurred in the Northern District of Illinois. Mot. 22, ECF No. 19. The Pilots respond that this district is the more appropriate district because one of the nine pilot plaintiffs resided in the Western District of Texas when he was terminated, whereas none of the plaintiffs reside in the Northern District of Illinois. Resp. 11, ECF No. 25. However, the root of this lawsuit comes from the Union's negotiations on behalf of its union members, not the firing of each individual member by United, a non-party. Compl. 14–15, ECF No. 1. Thus, the Court finds that this factor favors transfer.[3]

## CONCLUSION

The Court finds that a substantial part of the negotiations and decisions around the Union's response to United Airlines's mandatory vaccination program took place in the Northern District of Illinois. Consequently, it is a valid venue for this case. After analyzing the private and public interest factors laid out in *Volkswagen*, this Court finds that the relative access to sources of proof, the administrative difficulties flowing from court congestion, and the local interest in having localized interests decided at home weigh in favor of transferring the case. 545 F.3d at 315. The other factors are neutral. Hence, venue is "clearly more convenient" in the Northern District of Illinois and the Union's Motion should be granted. *Id.*

Accordingly, **IT IS HEREBY ORDERED** that Defendant Airline Pilots Association, International's ("the Union") "Contested Motion to Transfer Venue [ ]" ("Motion"), ECF No. 19, is **GRANTED**.

---

3 On April 24. 2023 the Union filed a Notice alerting the Court to two cases that also "involve United's vaccine mandate and the religious accommodations offered." Notice 1, ECF No. 30. Both cases are currently pending in the United States District Court for the Northern District of Illinois. Id. at 1–2. This information also weighs in favor of transfer. *See Tice v. Pro Football, Inc.*, 812 F. Supp. 255, 257 (D.D.C. 1993) ("It is pointless to keep separated two highly related cases . . . ").

**IT IS FURTHER ORDERED** that the above-captioned case be **TRANSFERRED** to the Northern District of Illinois.

**IT IS FINALLY ORDERED** that Defendant Airline Pilots Association, International's ("the Union") "Motion to Dismiss," ECF No. 20, is **DENIED AS MOOT**.

**SIGNED** this **25**th day of **April 2023**.

                                              **THE HONORABLE DAVID BRIONES**
                                              **SENIOR UNITED STATES DISTRICT JUDGE**