**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN D. WICKSTROM, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 2631** |
| | ) | |
| **AIR LINE PILOTS ASSOCIATION,** | ) | |
| **INTERNATIONAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Kevin D. Wickstrom, Robert D. Williamson, Erik W. Wichmann, James R. Breitsprecher, Tony H. McKenzie, Jon A. Sterling, Forace Hogan, Christopher P. Gates, and John Ellis (collectively, Wickstrom), assert that their union, Air Line Pilots Association, International (ALPA), breached its duty of fair representation. ALPA has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. For the reasons stated below, the Court grants the motion to dismiss for failure to state a claim.

**Background**

On August 6, 2021, United Airlines announced that all employees would be required to be fully vaccinated against COVID-19. Wickstrom, an ALPA member and United pilot, was terminated for refusing to comply with United's COVID-19 vaccination policy.

## A.    ALPA's response

In his complaint,[1] Wickstrom describes ALPA's response to United's developing COVID-19 vaccination policies as follows.

In May 2021, ALPA and United adopted Letter of Agreement (LOA) 21-02, which prohibited United from mandating COVID-19 vaccinations and instead provided monetary incentives for pilots to receive the vaccine.  LOA 21-02 also restricted certain destinations to vaccinated pilots only.  Wickstrom alleges that when an ALPA member "raised an objection to the emergency use authorization status of the vaccine," ALPA's Master Executive Council's (MEC) Chair told that member to "go get a fucking shot and collect $4K or he can STFU."  Compl. ¶ 29.

Wickstrom alleges that United then breached LOA 21-02 by requiring pilots to justify their requests for vaccine exemptions and by increasing the number of countries designated as destinations for vaccinated pilots.  ALPA did not challenge United's alleged breaches.  United eventually terminated LOA 21-02 when it established the vaccine mandate in August 2021.  United created an accommodation process "for vaccine objectors."  *Id.* ¶ 32.  Wickstrom alleges that ALPA did not assist members in seeking religious accommodations and provided "incorrect legal advice concerning the religious accommodation process."  *Id.* ¶ 36.  In his complaint, Wickstrom does not allege that the vaccine violates any plaintiff's religious practices or that any plaintiff

---

[1] The Court also refers to the documents that ALPA attaches to its motion to dismiss, namely, the collective bargaining agreement, LOA 21-02, and the parties' grievances, which are "referred to in [Wickstrom]'s complaint and are central to his claim."  *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (internal quotation marks omitted).  Wickstrom did not object to ALPA's contention that these documents may be considered in deciding a motion to dismiss.

sought a religious accommodation.

## A.    The grievance process

Wickstrom alleges that because United and ALPA's collective bargaining agreement (CBA) had lapsed, "all parties were required by the Railway Labor Act to maintain the terms and conditions of the previous [CBA] until a new contract was signed." *Id.* ¶ 20.

Under the CBA, pilots may file grievances concerning any United action, except for matters involving discipline or discharge, with United's Chief Pilot.  Pilots may appeal the Chief Pilot's decision to United's Senior Vice President-Flight Operations.  If United denies the pilot's grievance, ALPA may appeal the grievance to United's System Board of Adjustment, which includes a neutral arbitrator.  If a pilot disputes ALPA's decision not to appeal the grievance, the pilot may seek review from ALPA's MEC Grievance Review Panel.

On August 24, 2021, United pilots, including three of the plaintiffs, filed non-disciplinary grievances opposing the vaccine mandate.  One of the contentions the pilots raised was that because the CBA had lapsed, United's vaccine mandate violated the company's obligation under section 6 of the Railway Labor Act (RLA) to maintain the status quo.  ALPA did not assist with those grievances, and United denied the grievances.  The pilots appealed to the Grievance Review Panel, asking ALPA to submit their grievances to the System Board of Adjustment.  On March 11, 2022, the Grievance Review Panel, after a two-day hearing, declined the pilots' request.  The Panel reasoned that "any lawsuit alleging that United violated the RLA status quo obligation would be baseless" and that "Section 21-K [of the CBA] recognizes that

3

United may change personnel policies upon notice to ALPA, even though ALPA does not have to agree beforehand to any such changes."  Dkt. no. 47-1 at 124–25.

On September 28, 2021, ALPA filed a grievance "on behalf of approximately 12 pilots, including several Plaintiffs," to the System Board of Adjustment.  Compl. ¶ 44. ALPA interpreted the vaccine mandate as a "pilot qualification" issue, rather than a "condition of employment."  *Id.*  In its grievance, ALPA argued that pilots who were unqualified because they were unvaccinated were "subject to limited discipline," meaning that United lacked just cause to terminate them.  *Id.*  In February 2022, the Board denied the grievance, finding that ALPA "did not meet its burden of showing that [United] violated Section 20-A-5-d of the [CBA] when it refused to place unvaccinated pilots on non-qualified status" and that the CBA "does not appear to preclude [United] from using the discipline process for violation of its COVID-19 vaccination policy."  Dkt. no. 47-1 at 173.  The Board "ma[de] no determination as to whether the discipline imposed on the pilots who form the subject of this grievance was for just cause or not," because that question was outside the scope of the Board's jurisdiction.  *Id.*

 After the plaintiffs were terminated, ALPA also filed termination grievances for each plaintiff.  The grievance process for each plaintiff is still ongoing.

### Discussion

ALPA has moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), contending that the Court lacks subject matter jurisdiction over Wickstrom's claim because his claim is not ripe and over the claims of six plaintiffs who failed to exhaust ALPA's internal grievance procedures.  ALPA has also moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

4

A.    **Subject matter jurisdiction**

First, ALPA contends that Wickstrom's suit is not ripe because the plaintiffs' termination grievances are ongoing.  If the plaintiffs' termination grievances are ultimately successful, ALPA argues, this will resolve their claimed harm.

"The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems."  *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019); *see also Wis. Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011) ("Ripeness doctrine is based on the Constitution's case-or-controversy requirements as well as discretionary prudential considerations."). "Whether a claim is ripe for adjudication depends on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Barland*, 664 F.3d at 148 (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)).  "A case is not ripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 664 (7th Cir. 2021) (internal quotation marks omitted).

ALPA does not dispute that the plaintiffs were terminated from their employment, and the plaintiffs allege that their termination was because of ALPA's failure to fairly represent them.  Thus, the plaintiffs' claims are not "premised on uncertain or contingent events." *Church of Our Lord*, 913 F.3d at 676; *see also Mathis*, 12 F.4th at 664 (holding that "the case was ripe" where the plaintiff "claimed [the defendant] damaged him by its past conduct").  ALPA does not cite any authority for the proposition that the plaintiffs'

claims are not ripe because there is a possibility that "successful resolution of their Grievances would moot their claims."  Def.'s Opening Mem. at 8.  Rather, it is ALPA's mootness argument that "involves uncertain or contingent events that may not occur as anticipated, or not occur at all."  *Barland*, 664 F.3d at 148.  The Court therefore concludes that the plaintiffs' claims are ripe "as of the date of its decision."  *Church of Our Lord*, 913 F.3d at 677.

The only case ALPA cites in the duty of fair representation context illustrates the point.  *See Dolan v. Ass'n of Flight Attendants*, No. 95 C 7071, 1996 WL 131729 (N.D. Ill. Mar. 20, 1996).  In *Dolan*, the plaintiffs alleged that the union's intended bargaining position might cause them to lose their jobs.  *See id.* at *3.  The court held that the plaintiffs' duty of fair representation claim was not ripe because the "loss of jobs alleged by plaintiffs is a remote injury that may or may not occur."  *Id.*  In this case, by contrast, the plaintiffs have already been terminated.  The case is therefore ripe.

Next, ALPA contends that the Court lacks subject matter jurisdiction over the claims of the six plaintiffs who did not exhaust the grievance process outlined in the CBA.  Although ALPA primarily relies on cases interpreting the Labor Management Relations Act, rather than the RLA, Wickstrom does not dispute that his claim is subject to some kind of exhaustion requirement.  He argues, however, that various exceptions to the requirement apply in this case, including futility.

As a preliminary matter, it is not clear that exhaustion is truly a jurisdictional issue.  *See Staudner v. Robinson Aviation, Inc.*, 910 F.3d 141, 148 (4th Cir. 2018) (holding that the exhaustion requirement for a duty of fair representation claim brought under the Labor Management Relations Act "is a nonjurisdictional precondition to suit

6

rather than a jurisdictional limit"); *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 790 (6th Cir. 2012) ("[C]ompletion of the RLA-mandated arbitral process does not affect a district court's subject matter jurisdiction over a claim but instead goes to the court's ability to reach the merits of a dispute and grant relief . . . ."); *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 901 (7th Cir. 2019) (noting that "[n]one of this circuit's [RLA] decisions considers the effect of the Supreme Court's modern understanding of the difference between 'jurisdiction' and other kinds of rules"). As both parties recognize, the exhaustion requirement is subject to equitable exceptions. *See Clayton v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 451 U.S. 679, 689 (1981) ("[C]ourts have discretion to decide whether to require exhaustion of internal union procedures."). Because courts have "no authority to create equitable exceptions to jurisdictional requirements," *Bowles v. Russell*, 551 U.S. 205, 214 (2007), it follows that the exhaustion requirement is not jurisdictional.

That said, Wickstrom does not argue this point, contending instead that he has sufficiently alleged that exhaustion would have been futile in this case. The Court agrees. "Among the (non-exclusive) factors bearing on" whether to dismiss a duty of fair representation claim for failure to exhaust "are: (1) whether the union has manifested such hostility to the plaintiff's grievance as to render exhaustion of his internal appeal rights futile, (2) whether the internal union appeals procedures are inadequate either to reactivate the grievance or to result in complete relief to the plaintiff, and (3) whether demanding exhaustion would cause undue delay in the resolution of the plaintiff's complaint." *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 805 (7th Cir. 2008). At the motion to dismiss stage, Wickstrom has sufficiently alleged that

ALPA's hostility toward his grievances about the vaccine mandate rendered exhaustion futile. *See Lewis v. Loc. Union No. 100 of Laborers' Int'l Union of N. Am.*, 750 F.2d 1368, 1381 (7th Cir. 1984) ("[I]t is unreasonable to impose an exhaustion requirement solely on the basis of the pleadings when it is clear that the issue of union hostility has been raised and that the resolution of that issue requires further factual development."); *Stevens v. Nw. Indiana Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 733 n.30 (7th Cir. 1994) ("Mere allegations of union hostility may suffice to forestall dismissal at the pleading stage of a suit when the opportunity for factual development has not yet occurred . . . ."). Most of the cases ALPA cites are resolved on summary judgment and are therefore inapposite.

In sum, the Court denies ALPA's motion to dismiss for lack of subject matter jurisdiction.

## B. Failure to state a claim

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2019). The complaint must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

First, ALPA contends that Wickstrom's claim must be dismissed because he has

failed to allege a breach of the CBA. "Success in a hybrid contract/DFR suit depends on showing *both* that the employer violated the contract *and* that the union did not represent the workers fairly." *Cunningham v. Air Line Pilots Ass'n, Int'l*, 769 F.3d 539, 541 (7th Cir. 2014). ALPA argues that this is a "hybrid" suit because Wickstrom alleges that United breached the CBA and that ALPA violated the duty of fair representation by failing to challenge the breach.

Wickstrom does not clearly explain the basis of his duty of fair representation claim.[2] On the one hand, Wickstrom does not challenge ALPA's contention that he has brought a hybrid suit. *See* Pls.' Resp. Br. at 4 ("Although the employer is not named as a Defendant in this action, Plaintiffs understand that the Court may nevertheless qualify this case as a hybrid lawsuit."). On the other hand, Wickstrom also alleges that ALPA violated the duty of fair representation by failing to challenge United's change to his working conditions while section 6 negotiations under the RLA were ongoing. *See Air Line Pilots Ass'n, Int'l v. United Air Lines, Inc.*, 802 F.2d 886, 916 (7th Cir. 1986) ("Section 6 requires maintenance of the status quo with respect to rates of pay, rules, and working conditions."). This allegation is not necessarily premised on a violation of the existing CBA. *See id.* ("We have stressed that the status quo extends to those actual, objective working conditions out of which the dispute arose, and clearly these conditions need not be covered in an existing agreement." (quoting *Detroit & T.S.L.R. Co. v. United Transp. Union*, 396 U.S. 142, 153 (1969))). Thus, the Court examines

---

[2] Wickstrom does specifically note that he does not assert a duty of fair representation claim premised on his "allegations regarding LOA 21-02." Pls.' Resp. Br. at 6 n.1. Thus, the Court need not address ALPA's contention that such a claim, if it were asserted, must be dismissed.

both potential theories underlying Wickstrom's duty of fair representation claim.

First, regarding ALPA's failure to challenge United's alleged CBA violation, Wickstrom does not respond to ALPA's contention that United's vaccine requirement was permitted by Section 21-K of the CBA. Thus, Wickstrom has forfeited any argument that United violated the CBA. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). By forfeiting this point, Wickstrom's duty of fair representation claim premised on ALPA's failure to process his grievance that United violated the CBA necessarily fails. *See White v. Gen. Motors Corp.*, 1 F.3d 593, 595 (7th Cir. 1993) ("When an employee's underlying contractual claim lacks merit as a matter of law, the employee cannot complain that the union breached its duty of fair representation in failing to process his or her grievance."); *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 868 (7th Cir. 2009) (holding that, where the plaintiff failed to advance a "viable breach of contract theory," "his hybrid claim therefore c[ould] not succeed").

Second, regarding ALPA's failure to challenge United's alleged status quo violation, "[a] union breaches the duty of fair representation if its actions are (1) arbitrary, (2) discriminatory, or (3) made in bad faith." *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). "[E]ach prong must be considered separately in determining whether or not a breach has been pleaded." *Id.* (alteration accepted) (internal quotation marks omitted). Wickstrom contends that he has alleged a breach of the duty of fair representation under all three theories. The Court addresses each in turn.

### 1.  Arbitrary

First, "[t]he Supreme Court has held that a 'union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational.'" *Rupcich v. United Food & Com. Workers Int'l Union*, 833 F.3d 847, 854 (7th Cir. 2016) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)).  In determining whether ALPA acted arbitrarily, the Court "employ[s] an objective inquiry."  *Bishop*, 900 F.3d at 397 (internal quotation marks omitted).  "[A]ny substantive examination of a union's performance must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities."  *Id.* at 398 (alterations accepted) (quoting *O'Neill*, 499 U.S. at 78).

"Insofar as grievances are concerned, 'a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion."  *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) (quoting *Vaca v. Sipes*, 386 U.S. 171, 191 (1967)).  "But . . . only an egregious disregard for the union members' rights constitutes a breach of the union's duty."  *Id.* (alteration accepted) (internal quotation marks omitted).  "At the pleading stage, [the plaintiff] need not prove that the union acted irrationally; that said, he must include enough details about the subject-matter of the case to present a story that holds together."  *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 470 (7th Cir. 2020) (internal quotation marks omitted).

Wickstrom's contention that ALPA acted irrationally does not hold together.  He alleges that ALPA failed to challenge the vaccine mandate.  But, as explained above, he failed to respond to ALPA's contention that the CBA permitted United to require COVID-

11

19 vaccinations. To the extent Wickstrom alleges that ALPA should have filed suit to prevent the vaccine mandate, ALPA contends that it could not have done so because such a dispute would be a "minor dispute" under the RLA and therefore not a basis for a lawsuit in court seeking an injunction. *See* Def.'s Opening Mem. at 11. Wickstrom does not respond to this contention. Although Wickstrom points to the System Board of Adjustment's opinion that being unvaccinated was not a "pilot qualification" issue, Pls.' Resp. Br. at 16, he does explain how that suggests that ALPA's determination that it could not pursue an injunction was "so far outside a 'wide range of reasonableness' that it is wholly 'irrational.'" *Bishop*, 900 F.3d at 398 (quoting *O'Neill*, 499 U.S. at 78).

Moreover, Wickstrom has not alleged that ALPA pursued their grievances in a perfunctory way. Rather, he alleges that ALPA did pursue to arbitration grievances challenging United's vaccine mandate, but on different grounds than he would have preferred. But ALPA "is not obliged to take all member grievances to arbitration," and it may consider "such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer" in declining to do so. *Neal*, 349 F.3d at 369. Wickstrom has not alleged any facts suggesting that ALPA's MEC Grievance Review Panel's decision, after a two-day hearing, not to take his specific grievance to arbitration was arbitrary. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013) ("[D]eclining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation.").

In short, Wickstrom has failed to allege that ALPA breached the duty of fair representation by acting arbitrarily.

12

### 2. Discrimination and bad faith

To allege that "a union's actions are discriminatory or in bad faith," a plaintiff must allege "that the union acted (or failed to act) due to an improper motive." *Bishop*, 900 F.3d at 398 (internal quotation marks omitted). This "calls for a subjective inquiry into the union's motives." *Id.* The Seventh Circuit has recognized that "[t]he interests of individual employees sometimes may be compromised for the sake of the larger bargaining collective." *Id.* (internal quotation marks omitted). Thus, "a claim of discrimination or bad faith must rest on more than a showing that a union's actions treat different groups of employees differently." *Id.* Put another way, "[a] union member's claim must be based on more than the discriminatory *impact* of the union's otherwise rational decision to compromise." *Id.* Examples of improper motives include "disfavor[ing] members who supported a losing candidate for union office," "mak[ing] decisions for no apparent reason other than political expediency," or "mak[ing] decisions *solely* for the benefit of a stronger, more politically favored group over a minority group." *Id.* at 398–99 (internal quotation marks omitted). "A conclusory allegation of bad faith conduct, without more, does not show illegality." *Taha*, 947 F.3d at 472.

Wickstrom's allegations that ALPA discriminated against unvaccinated pilots by failing to pursue his grievances or challenge the vaccine mandate in the manner he wished do not suggest an improper motive. Wickstrom does not allege that ALPA acted for "no apparent reason other than political expediency." *See Bishop*, 900 F.3d at 399 (internal quotation marks omitted). Rather, he alleges that ALPA was motivated to demonstrate that "it was deserving of money from the government because all of its pilots were vaccinated." Pls.' Resp. Br. at 18. This does not amount to an improper

13

motive because, as ALPA points out, "preventing pilot layoffs and pay cuts are legitimate union purposes, as is protecting ALPA's members' health." Def.'s Reply Br. at 6. Thus, Wickstrom has not alleged that ALPA "arbitrarily cho[se] to disregard [his] interests" as an unvaccinated pilot "in favor of the interests of the stronger, more politically favored majority" of vaccinated pilots, but rather that ALPA was required to "make decisions" about its response to the COVID-19 pandemic that had a "discriminatory *impact*" on unvaccinated pilots. *See Bishop*, 900 F.3d at 398–99 (internal quotation marks omitted).

Wickstrom alleges that ALPA's hostility toward unvaccinated pilots is illustrated by the MEC Chair's response to a "member who raised an objection to the emergency use authorization status of the vaccine to 'go get a fucking shot and collect $4K or he can STFU.'" Compl. ¶ 29. But this response, made months earlier before United established its vaccine mandate, does not plausibly allege that, in declining to pursue a grievance challenging the claimed status quo violation, ALPA acted on the basis of hostility toward vaccine objectors. Indeed, the fact that ALPA filed a grievance against United's vaccine mandate and a termination grievance on Wickstrom's behalf "tends to show that it bore no ill will toward him." *Souter v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., Loc. 72*, 993 F.2d 595, 599 (7th Cir. 1993).

In short, Wickstrom has not plausibly alleged that ALPA's actions were discriminatory or made in bad faith.

Lastly, Wickstrom alleges that ALPA gave members incorrect advice about United's religious accommodation process. But this allegation fails to state a claim for breach of the duty of fair representation. First, Wickstrom does not allege that he

sought or wished to seek a religious exemption to United's vaccine mandate. Thus, even assuming ALPA's incorrect advice on the process breached the duty of fair representation, the breach was harmless. A "plaintiff cannot recover for [a] harmless breach of duty of fair representation." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1180 (7th Cir. 1995) (holding that the plaintiff's union's "misrepresentations regarding his right to consult an attorney," even if made "arbitrarily or in bad faith," could not establish a viable claim where "there [wa]s no [ ] evidence of harm"). Second, Wickstrom does not respond to ALPA's contention that it does not have the exclusive ability to enforce United's religious accommodation process, which arises from Title VII, not the CBA. "If a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation." *Freeman v. Loc. Union No. 135*, 746 F.2d 1316, 1321 (7th Cir. 1984).

In sum, the Court holds that Wickstrom has failed to allege that ALPA breached its duty of fair representation. The Court therefore need not address ALPA's contention that Wickstrom's claim is time-barred.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss for lack of subject matter jurisdiction but grants defendant's motion to dismiss for failure to state a claim [dkt. no. 47]. Unless plaintiffs file, by September 26, 2023, a proposed amended complaint stating at least one viable claim over which the Court has jurisdiction, the Court will enter judgment in favor of defendant. The case is set for a telephonic status hearing on September 29, 2023 at 9:00 a.m., using call-in number

888-684-8852, access code 746-1053.

_____

MATTHEW F. KENNELLY
United States District Judge

Date: September 5, 2023