UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN D. WICKSTROM; <br> ROBERT D. WILLIAMSON; <br> ERIK W. WICHMANN; <br> JAMES R. BREITSPRECHER; <br> TONY H. MCKENZIE; <br> JON A. STERLING; <br> FORACE HOGAN; <br> CHRISTOPHER P. GATES; <br> and JOHN ELLIS, <br><br> Plaintiffs, <br><br> v. <br><br> AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, <br><br> Defendant. | Civil Action No. 1:23-cv-02631 <br><br> Honorable Matthew F. Kennelly <br><br> FIRST AMENDED COMPLAINT <br> [DEMAND FOR JURY TRIAL] |

**FIRST AMENDED COMPLAINT**

Plaintiffs Kevin D. Wickstrom, Robert D. Williamson, Erik W. Wichmann, James R. Breitsprecher, Tony H. McKenzie, Jon A. Sterling, Forace Hogan, Christopher P. Gates, and John Ellis (collectively, "Plaintiffs") bring this action against Defendant Air Line Pilots Association, International ("ALPA") for breach of the union's duty of fair representation under the Railway Labor Act, 45 U.S.C. § 151, *et seq*. For their Complaint, Plaintiffs state as follows upon personal knowledge as to those matters pertaining to them individually and upon information and belief as to the remaining allegations:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 in that it arises under the laws of the United States and Acts of Congress regulating commerce, specifically the Railway Labor Act, 45 U.S.C. § 151, *et seq.* The damages sought exceed $10,000.00.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims arose in this district.

## PARTIES

3. Plaintiff Wickstrom is a citizen and resident of the state of Texas and county of El Paso. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

4. Plaintiff Williamson is a citizen and resident of the state of Colorado and county of Douglas. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

5. Plaintiff Wichmann is a citizen and resident of the state of Arizona and county of Maricopa. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

6. Plaintiff Breitsprecher is a citizen and resident of the state of Utah and county of Davis. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

7. Plaintiff McKenzie is a citizen and resident of the state of Colorado and county of El Paso. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

8. Plaintiff Sterling is a citizen and resident of the state of Texas and county of Dallas. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

9. Plaintiff Hogan is a citizen and resident of the state of California and county of Los Angeles. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

10. Plaintiff Gates is a citizen and resident of the state of Colorado and county of Douglas. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with Unites Airlines' mandatory COVID vaccination program.

11. Plaintiff Ellis is a citizen and resident of the state of Wisconsin and county of Waukesha. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

12. Defendant ALPA is a national labor union and was at all relative times the certified collective bargaining representative under the Railway Labor Act for Plaintiffs. *Id*. Upon information and belief, Defendant's principal place of business is McLean, Virginia.

13. Plaintiffs have the capacity and standing to sue. Defendant has the capacity to be sued. All conditions precedent have been satisfied.

## INTRODUCTION

14. When United Airlines ("United") announced a mandatory vaccination program for its unionized pilot workforce in August 2021, there was virtually no push back from the Defendant in this case, even though it was the sole collective bargaining representative for United pilots and was in the process of negotiating a new contract under an expired collective bargaining agreement. Not only did Defendant fail to challenge the involuntary vaccination program imposed on its members, but it also attempted to discourage its members from filing any grievances against the program. When Plaintiffs did file "status quo" grievances, Defendant limited the reach of those grievances so that the actual vaccine program, which altered conditions of employment, would not be challenged. Defendant ultimately decided to cut off processing Plaintiffs' grievances notwithstanding the fact that Defendant had received legal interpretations indicating that the original grievances were well-founded under the United Pilots Agreement ("UPA") and appropriate to challenge United's vaccine mandate. Defendant's actions were the culmination of a calculated effort, that lasted almost two years, to ensure that United's vaccine mandate was enforced against Defendant's membership in order to maintain federal funding and support the political narrative established under the current administration.

## FACTS

15. On or about April 15, 2020, United accepted approximately $5 billion in funding through the Federal Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The company benefited from additional infusions of money via follow-up federal programs such as the Payroll Support Program and the American Rescue plan, as well as federal contracts that were currently underway. The conditions attached to the receipt of the latest

4

CARES Act funds ultimately prohibited United from conducting layoffs, involuntary furloughs, or cutting the pay rates of employees until September 30, 2021, or until the funds were exhausted, whichever occurred later.

16. At no time did Defendant demand an accounting from United as to the status of these funds, and, in particular, did not inquire about the status after United announced layoffs, pay cuts, and pilot terminations as part of its vaccination program. Upon information and belief, Defendant supported all COVID-19 initiatives undertaken by United in an effort to maintain this federal funding. This included a dramatic increase in United's line of credit shortly after United Chairman Kirby indicated his preference for 100% vaccination rates within the company. At a World Economic Forum meeting, Kirby also stated that he supported the White House effort to mandate vaccinations for virtually all of the federal and private sector workforce.

*ALPA Changes Its Position to Support United's Mandate*

17. At all times during the occurrence of the events noted in this Complaint, Defendant and United were operating under the terms of a lapsed collective bargaining agreement. Under these circumstances, all parties were required by the Railway Labor Act to maintain the terms and conditions of the previous collective bargaining agreement until a new contract was signed.

18. On May 28, 2020, Defendant advised Plaintiffs and the United pilot membership that they should expect United management to try to unilaterally alter the collective bargaining agreement with respect to working conditions as a result of the COVID-19 pandemic and called for a unified front to forestall United management efforts.

19. During the fall and early winter of 2020-21, Defendant negotiated several letters of agreement with United related to seniority and furlough mitigation. Specifically, Letter of Agreement ("LOA") 20-05 was negotiated with United and then submitted to the union membership for ratification in accordance with Article XIII, Section 7 of the United MEC policy manual. That provision requires member ratification when an agreement between Defendant and United "substantially affects wages, working conditions."

20. Within two weeks of United CEO Kirby indicating that he expected mandatory workplace vaccinations to be in place, Defendant echoed Kirby's remarks in a memo to its membership on January 25, 2021. Defendant erroneously claimed that a vaccine mandate was contractually permissible (but offered no authority in the United Pilots' Agreement in support) and, at the same time, tried to minimize the possibility of individual exceptions based on religious or disability claims.

21. At no time did Defendant poll or discuss with its membership whether it should oppose a vaccine mandate put in place by United management. Instead, Defendant, in violation of the RLA and its collective bargaining obligations, embarked on a program of collusive conduct with United to impose vaccine mandates on its workforce in full or in part to maintain federal funding.

22. In a letter signed by five other unions on January 28, 2021, Defendant lobbied congressional leaders for continued funding of the federal assistance and indicated its support for an aggressive public vaccination campaign.

23. After the Federal funding for United continued, as part of the Payroll Support Program, on March 11, 2021, furlough layoff and pay reduction protection was extended until September 30, 2021, or until all the funds were expended, whichever was later.

Notwithstanding this prohibition on pilot furloughs or pay cuts, Defendant, via a Letter of Agreement (LOA 21-02), assisted United management in instituting a two-tier system limiting compensation for unvaccinated pilots two months later, without submitting the LOA to United pilot membership as required.

24. LOA 21-02 established a two-tier structure for pilots within United. Vaccinated pilots were allowed to fly virtually all routes within the system while unvaccinated pilots were limited to specific routes. Pilots who were unvaccinated began to suffer financial loss as their routes were limited and their options for taking on alternative routes were shut down by the terms of the LOA.

25. Following its adoption on May 25, 2021, United breached the terms of LOA 21-02 by requiring employees to justify their request for vaccine exemptions prior to the LOA's termination. Defendant did not challenge this breach but rather claimed the issue was of a "personal" nature and therefore between its union members and United. Moreover, the union did nothing to stop United management from arbitrarily designating and increasing the number of airports and countries as "vaccination destinations" under the terms of LOA 21-02, thereby restricting the number of airports available to unvaccinated pilots and increasing the likelihood that they would suffer a financial penalty based on their vaccination status.

26. LOA 21-02 also eliminated any requirement for pilots to divulge their vaccination status or to take the vaccine during the term of the letter agreement. Again, the union did nothing when United management began requiring such disclosures and mandating the shot before United management voided the agreement.

27. In addition to its overall nonchalance about member rights with respect to vaccination, Defendant's senior leadership was personally hostile to union members who were unvaccinated. On May 27, 2021, United Airlines Master Executive Counsel's ("UAL MEC") chairman Todd Insler told a member who raised an objection to the emergency use authorization status of the vaccine to "go get a fucking shot and collect $4K or he can STFU".

28. At the beginning of July 2021, United's CEO decided that he was going to initiate a vaccine mandate on his workforce. He decided this although United and Defendant were working under an expired collective bargaining agreement and federal law specifically prohibited un-bargained for major changes in the status quo in this circumstance. Defendant refused to raise this issue with United management when the program was implemented. Senior United officials later stated that the vaccine mandate and leave without pay furlough were not negotiated with Defendant, but rather were "socialized".

29. United management also violated the collective bargaining agreement by sending postcards in the mail with individual employee vaccination status clearly available to anyone handling the postcard. Defendant did not raise an objection.

30. On August 1, 2021, United management established its reasonable accommodation process ("RAP") for vaccine objectors. Although this was clearly a modification of the terms and conditions of employment covered by the collective bargaining agreement, Defendant raised no objection.

31. As part of its RAP, United began illegal inquiries into the religious practices of its employees who claimed religious exemptions from the vaccine mandate. This included Defendant's members. Although the United Pilots' Agreement (Sec. 21-U and 21-G)

contained a specific provision allowing the union to intervene on a pilot's behalf regarding matters of discrimination and violations of federal law, Defendant continued to take a hands-off stance in the face of these violations.[1]

32. In an effort to discourage vaccine exemptions and support United management by boosting vaccination numbers among its membership, Defendant distributed incorrect legal advice concerning the religious accommodation process, literally telling its members that in order to claim a proper religious accommodation they must be an adherent of a recognized religion with an established opposition to the vaccination process.

33. United management announced the vaccine mandate on August 6, 2021. Although the mandate clearly altered the terms and conditions of employment for its members, Defendant did not raise an immediate objection, did not seek to block the mandate by going into court or seeking arbitration under the Railway Labor Act, and did not take any other action to oppose the mandate program. In response to United management's declaration of a vaccine mandate, Defendant advised its members that the only objection to a mandatory vaccination program was an EEOC-based one and not something included under the collective bargaining agreement.

34. Immediately after the announcement of the vaccine mandate, Defendant began advising their members that the mandate was a "job qualification" versus a "condition of employment." Defendant claimed that United may determine job qualifications unilaterally under the terms of the collective bargaining agreement. From that point forward, the union actively opposed any attempt by its members to challenge the vaccine mandate.

---

[1] Plaintiffs in this matter are not alleging that their injuries stemmed from Defendant's failure to intervene in United's handling of the RAP. Rather, Plaintiffs are alleging that Defendant's failure to intervene is yet another example of ALPA's collusive conduct.

35. On August 24, 2021, United pilots filed a grievance with the Chief Pilot Office of Defendant's Chicago operation. The grievance claimed Railway Labor Act Section 6 status quo violations, contract violations, and LOA 21-02 violations. Other pilots, including Plaintiffs, began filing their own grievances opposing the vaccine mandate.

36. In response to the grievances, Defendant deliberately altered its role in the grievance process by attempting to have the members "self-file" their grievances because the union did not support the action. Pilot members who filed grievances against the vaccine mandate were told that the union wanted nothing to do with the vaccine mandate grievances and prohibited union staff from arguing on behalf of the aggrieved pilots.[2]

37. Defendant ALPA, at least temporarily, recognized the issues with United's mandatory vaccine program when it noted in an editorial published in ALPA magazine on September 1, 2021, that ALPA "has been very clear that any *vaccination requirements are an issue that must be bargained for* and ultimately agreed to by each ALPA pilot group," (emphasis added).

38. After September 1, 2021, Defendant's leadership hardened against unvaccinated members who challenged the United vaccine mandate. Local chapter leadership of Defendant refused to accept individual member grievances as required by Defendant's policy. For example, on September 2, 2021, a Defendant official told a pilot member asking for assistance in filing a grievance opposing the RAP that, "ALPA has zero to do with that

---

[2] Defendant had already advised its United chapter leadership to avoid interacting with ALPA members who objected to the vaccine mandate, effectively eliminating any union role in disputing in any way and at any level United's unilateral violation of the union contract or the RLA.

issue…Even if you are successful in the RAP, that doesn't mean you'll still be a pilot at United."

39. Defendant failed to protest or otherwise raise an objection to the RAP enacted by United management on or about September 9, 2021, with a leave of absence provision that had no basis in, and in fact violated, the collective bargaining agreement.

40. On September 10, 2021, the UAL MEC advised United's Senior Vice President for Operations that Defendant would not support the pilot mandate challenges, effectively telling United that there would be no union support for vaccine mandate challengers, weeks before the mandate was imposed.

41. On September 23, 2021, the initial hearing officer for the grievances opposing the vaccine mandate (the "status quo" grievances) filed by individual pilots in Denver rejected their grievances. This was repeated across United for all grievances opposing the vaccine mandate, and with no support from Defendant.

42. On September 27, 2021, United revoked LOA 21-02. At the same time, United established its vaccine mandate policy with a deadline for compliance. ALPA failed to challenge the mandate by filing a status quo grievance.

43. Instead, on September 28, 2021, ALPA filed an "instant grievance" on behalf of approximately 12 pilots, including several Plaintiffs, who were neither vaccinated nor had an approved RAP. The union took the position that it would not challenge the vaccine mandate as a violation of the collective bargaining agreement, but rather requested that the company treat unvaccinated pilots as lacking qualification and therefore subject to limited discipline.

44. This grievance was a sham, designed to facilitate United's vaccine mandate and, at the same time, allow discipline to proceed against the unvaccinated pilots. Specifically, the union argued that the unvaccinated pilots were guilty of violating a company policy but that their penalty should be mitigated. The case went to an arbitrator for hearing on the issue of whether the mandate was a pilot qualification requirement or a term and condition of employment—but only after United terminated the unvaccinated pilots.

45. On September 28, 2021, UAL MEC's Chairman Insler, noting that American and Southwest unions were proposing work slowdowns, identified the connection between the federal revenue and Defendant's acquiescence to the UAL vaccine mandate, stating that it must be awkward for those businesses that asked for exemptions and compensation from the Government while United's pilots were 100% vaccinated and did not need to deal with unvaccinated exemptions or disruptions.

46. In its quarterly report on October 14, 2021, Defendant deliberately misstated the vaccine mandate as a job qualification versus a condition of employment, something that even United management did not agree with. This was done in an effort to obscure the fact that the vaccine mandate was indeed a bargainable issue under the terms of the collective bargaining agreement.

47. United began terminating Plaintiffs from employment on November 1, 2021. In addition, all remaining unvaccinated pilots were forced on unpaid leave starting on November 11, 2021.

48. In December 2021, United SVP Quigley denied the "self-filed" "status quo" grievances of individual United pilots; they appealed to UAL MEC's grievance panel for a decision to take the cases to arbitration.

49. On February 15, 2022, the grievance system board of adjustments arbitrator rendered an opinion on the September 28, 2021 "instant grievance" filed by Defendant. The arbitrator found that the vaccine mandate was not a "pilot qualification" issue. The decision put Defendant on notice that the vaccine mandate was in fact a term or condition of employment and United's unilateral action violated Sec. 1 of the UPA and was subject to Section 3 or Section 6 arbitration under the Railway Labor Act.

50. Instead of challenging the mandate as a term or condition of employment, on March 11, 2022, Defendant's Grievance Review Panel followed the direction of ALPA United MEC Chair Insler and denied Plaintiffs' grievance from moving forward to the system board of adjustment where the "terms and conditions of employment" argument could be raised formally through the parties' grievance system.

51. Defendant's decision effectively ended the ability of Plaintiffs to challenge the vaccine mandate program through their collective bargaining agent and meant that Defendant would not challenge their terminations or seek to remedy them.

## COUNT I

**Breach of the Duty of Fair Representation**

52. Plaintiffs reallege and incorporate by reference paragraphs 1 through 51 above as if fully set forth herein.

53. Plaintiffs assert herein a claim against ALPA for breach of their duty of fair representation to Plaintiffs under the Railway Labor Act, 45 U.S.C. § 151, *et seq.* Under this Act, ALPA, as the exclusive bargaining agent of United's pilots, owes a duty of fair representation to Plaintiffs.

54. A union breaches its duty of fair representation where its actions are arbitrary, discriminatory, or in bad faith. *Martin v. American Airlines, Inc.*, 390 F. 3d 601, 606 (8th Cir. 2004).

55. Defendant's collusion with Plaintiffs' employer, United Airlines, and its refusal to pursue Plaintiffs' meritorious grievances against the new vaccine requirement were in violation of their duty of fair representation because their conduct was in bad faith, arbitrary, and discriminatory.

56. The conduct alleged in paragraphs 21-22, 25-26, 28-30, 33, 42, and 46 either directly or indirectly violated the United Pilots Agreement (Section 1(a)) between Defendant and United, as well as the provisions of the RLA. Notwithstanding its earlier representation that the vaccine mandate would be a mandatory subject of collective bargaining before implementation, Defendant instead elected to not only ignore United's illegal actions, but to endorse and support them.

57. A union acts in bad faith where it acts or fails to act due to an improper motive. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). Defendant colluded with United to implement the vaccine mandate, refused to challenge the mandate, and refused to represent pilots who were placed on unpaid leave or terminated as a result of the mandate.

58. Pursuant to 45 U.S.C. § 156, Defendant and United were required to provide employees with notice of an "intended change in agreements affecting rates of pay, rules, or working conditions." United was not permitted to make changes to rates of pay, rules, or working conditions while the change was being mediated and finalized—*i.e.*, United was required to maintain the "status quo."

59. When United Airlines violated the collective bargaining agreement and the RLA by unilaterally mandating the vaccine, Defendant had a duty to object to the implementation of the requirement on the basis that United changed the rates of pay and working conditions for unvaccinated pilots in particular.

60. Defendant was improperly motivated by its desire to represent the interests of United and its own leadership bias as opposed to its members to whom it had a legal duty to fairly represent, because Defendant sought to curry favor with United Airlines leadership and other politically connected groups who favored vaccine mandates.

61. Arbitrary conduct is defined as conduct that is "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted). Employees must show "fraud, deceitful action, or dishonest conduct." *Baxter v. United Paperworkers Int'l Union, Local 7370*, 140 F.3d 745, 747 (8th Cir. 1998) (citing *Washington v. Service Employees Int'l Union, Local 50*, 130 F.3d 825, 826 (8th Cir. 1997).

62. Defendant's failure to follow its own policies that required member ratification of LOAs and its collusion with United to not oppose an alternation to the company's basic employment conditions was so far outside a wide range of reasonableness as to be irrational. Additionally, in colluding with United and failing to submit LOA 21-02 for member ratification, Defendant's actions were invidious, deceitful, and dishonest towards Plaintiffs, all of whom it was responsible to represent fairly, and evidence of arbitrary, discriminatory or bad faith motivation.

63. To breach the duty of fair representation, discriminatory conduct must be "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of Street, Elec.*

*Ry. & Motor Coach Emps. Of Am. V. Lockridge*, 403 U.S. 274, 301 (1971). United effectively created two classes of pilots when it implemented LOA 21-02—those who were vaccinated and those who were not and continued the discrimination in its vaccine mandate. Defendant failed to oppose United's discriminatory policies in which vaccinated pilots received certain benefits and incentives while unvaccinated pilots faced dropped flights and pay cuts.

64. Defendant's invidious and discriminatory conduct was compounded by its refusal to advocate for unvaccinated pilots who were placed on unpaid leave or terminated following the implementation of the vaccine mandate. Defendant's conduct in colluding with United and refusing to oppose United's two-class system as well as the mandate itself was intentional, severe, and unrelated to legitimate union objectives.

65. Plaintiffs, as a direct result of Defendant's bad faith, arbitrary, and discriminatory conduct in its failure to adhere to its duty of fair representation to Plaintiffs, have been deprived and continue to be deprived of their employment with United Airlines in addition to wages and benefits associated with their employment.

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Award Plaintiffs compensatory damages in an amount to be determined, including pre- and post-judgement interest;

B. Award the Plaintiffs their reasonable attorney fees and costs of the suit; and

C. Grant such other and further relief as is just and proper under the circumstances.

## REQUEST FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated: September 26, 2023                    Respectfully submitted,

        *s/ Daniel K. Cetina*
        Daniel K. Cetina (Illinois SBN: 6320423)
        Walsh, Knippen & Cetina, Chartered
        2150 Manchester Road, Suite 200
        Wheaton, IL 60187
        Telephone: (630) 462-1980
        Facsimile: (630)-462-1984
        dan@wkc-lawyers.com

        */s/ Carol A. Thompson*
        Carol A. Thompson (*Pro Hac Vice*)
        Federal Practice Group
        1750 K Street, N.W., Suite 900
        Washington, D.C. 20006
        Telephone: (202) 862-4360
        Facsimile: (888) 899-6053
        cthompson@fedpractice.com

        */s/ John J. Michels, Jr.*
        John J. Michels, Jr. (*Pro Hac Vice*)
        Federal Practice Group
        1750 K Street N.W., Suite 900
        Washington, D.C. 20006
        Telephone: (202) 862-4360
        Facsimile: (888) 899-6053
        lmichels@fedpractice.com

        */s/ Saroja C. Koneru*
        Saroja C. Koneru (*Pro Hac Vice*)
        Federal Practice Group
        1750 K Street N.W., Suite 900
        Washington, D.C. 20006
        Telephone: (202) 862-4360
        Facsimile: (888) 899-6053

        *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of September 2023, I electronically transmitted the foregoing to the U.S. District Court Clerk's office using the CM/ECF System for filing.

*s/ Daniel K. Cetina*
Daniel K. Cetina (Illinois SBN: 6320423)
Walsh, Knippen & Cetina, Chartered
2150 Manchester Road, Suite 200
Wheaton, IL 60187
Telephone: (630) 462-1980
Facsimile: (630)-462-1984
dan@wkc-lawyers.com
