# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| KEVIN D. WICKSTROM, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-02631 |
| | ) | |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | ) | Honorable Matthew F. Kennelly |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPPOSITION OF DEFENDANT AIR LINE PILOTS ASSOCIATION, INTERNATIONAL TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

James K. Lobsenz (*pro hac vice*)
Joshua J. Ellison (*pro hac vice*)
AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
Tel.: (703) 481-2423
Fax: (703) 481-2478
*Jim.Lobsenz@alpa.org*
*Joshua.Ellison@alpa.org*

Rami N. Fakhouri
Caleb A. Kennedy
GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
Tel.: (312) 681-6000
Fax: (312) 881-5191
*rfakhouri@goldmanismail.com*
*ckennedy@goldmanismail.com*

*Attorneys for Defendant Air Line Pilots Association, International*

October 27, 2023

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

GLOSSARY OF DEFINED TERMS ................................................................................... vi

INTRODUCTION ...............................................................................................................1

PLAINTIFFS' ALLEGATIONS .........................................................................................2

I.    Allegations Common to the IC and the FAC ...........................................................2

    A.    LOA 21-02 and United's Subsequent Vaccine Mandate .................................2

    B.    The Grievance Process Under the UPA ............................................................3

    C.    The Status Quo Grievances ..............................................................................3

    D.    The MEC Grievance .........................................................................................4

II.   The Dismissal of the Initial Complaint ...................................................................4

III.  The First Amended Complaint's Two New Claims and Rehashed Old
    Allegations ...............................................................................................................5

ARGUMENT .....................................................................................................................7

I.    The Court Should Deny Leave to Amend Because Amendment Would Be
    Futile. .......................................................................................................................7

    A.    Plaintiffs' DFR Claims Based on LOA 21-02 Are Futile. ...............................7

        1.    The DFR Claims Are Untimely. .............................................................7

        2.    Plaintiffs Do Not State a Plausible Claim Concerning LOA
            21-02. ...................................................................................................8

    B.    The FAC Still Fails to Plausibly Allege that ALPA's Decision Not
        to Challenge the Vaccine Mandate Violated the DFR. .....................................9

        1.    Plaintiffs Fail to State a Plausible DFR Claim with Respect
            to United's Alleged Violation of the RLA's Status Quo
            Provisions. .............................................................................................9

        2.    The FAC Does Not Plausibly Allege a DFR Claim Over
            ALPA's Decision Not to File or Support a Status Quo
            Grievance. .............................................................................................11

a.      Plaintiffs Do Not Plausibly Allege that United's Vaccine Mandate Breached the UPA. ...........................................11

b.      Plaintiffs Do Not Plausibly Allege Arbitrary, Discriminatory or Bad Faith Conduct by ALPA. .........................12

     i.      The FAC Fails to Plausibly Plead Arbitrariness.......................................................................12

     ii.      The FAC Fails to Plausibly Plead Discrimination.....................................................................13

     iii.      The FAC Fails to Plausibly Allege Bad Faith. .............................................................................13

II.      Plaintiffs Should Not Be Granted Leave to Attempt to Amend a Second Time. ..................................................................................................14

CONCLUSION..........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*AFA v. Mesa Air Group, Inc.*, 567 F.3d 1043 (9th Cir. 2009) ......................................................10

*Airline Prof'ls Ass'ns of IBT, Local Union No. 1224 v. ABX Air, Inc.*, 274 F.3d 1023 (6th Cir. 2001) ..........................................................................................................10

*ALPA v. O'Neill*, 499 U.S. 65 (1991) .........................................................................................9

*ALPA v. United*, 802 F.2d 886 (7th Cir. 1986) ............................................................................10

*Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274 (1971) ...................................................................................................9, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................8

*Bishop v. ALPA*, 5 F.4th 684 (7th Cir. 2021) .............................................................................13

*Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501 (7th Cir. 2013) ...........................................2

*Consol. Rail Corp. v. Ry. Lab. Execs. Ass'n*, 491 U.S. 299 (1989) ...............................................10

*Cunningham v. ALPA*, 769 F.3d 539 (7th Cir. 2014) ...................................................................11

*DelCostello v. IBT*, 462 U.S. 151 (1983) .....................................................................................11

*Detroit & T.S.L.R. Co. v. UTU*, 396 U.S. 142 (1969) .................................................................10

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953) ......................................................................14

*Garcia v. City of Chicago*, 24 F.3d 966 (7th Cir. 1994) ................................................................7

*Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171 (7th Cir. 1995) .........................................................9

*Glick v. Koenig*, 766 F.2d 265 (7th Cir. 1985) .............................................................................7

*IBT Airline Div. v. Frontier Airlines, Inc.*, 628 F.3d 402 (7th Cir. 2010) ....................................10

*Mac Naughton v. Harmelech*, 2018 WL 11249347 (N.D. Ill.) ......................................................7

*Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293 (7th Cir. 1992) .............................11

*Ranieri v. UTU*, 743 F.2d 598 (7th Cir. 1984) .............................................................................7

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993) ...........................2

*Vorgias v. Mem'l Health Sys., Inc.*, 2012 WL 5947773 (N.D. Ind.) ................................7

*West v. Conrail*, 481 U.S. 35 (1987) ...........................................................................7

*White v. Gen'l Motors Corp.*, 1 F.3d 593 (7th Cir. 1993) ............................................11

*Yeftich v. Navistar, Inc.*, 722 F.3d 911 (7th Cir. 2013) ................................................14

**Statutes and Rules:**

45 U.S.C. § 156 ...........................................................................................................3

Fed. R. Civ. P. 15(c)(1)(b) ..........................................................................................7

**Miscellaneous Authorities:**

Exec. Order No. 14042, 86 Fed. Reg. 50985 (Sept. 9, 2021) ........................................9

## GLOSSARY OF DEFINED TERMS

| | |
|---|---|
| ALPA | Defendant Air Line Pilots Association, International and, collectively, ALPA and the United Airlines Master Executive Council of ALPA |
| App. | Appendix filed with this Opposition |
| Board/System Board | United Airlines Pilots' System Board of Adjustment |
| CBA | Collective bargaining agreement |
| DFR | Duty of Fair Representation |
| FAC | Plaintiffs' proposed First Amended Complaint (filed September 26, 2023) [Dkt. # 52] |
| GRP | United Pilots' Grievance Review Panel |
| IC | Plaintiffs' Initial Complaint (filed Sept. 7, 2022) [Dkt. # 1] |
| LOA 21-02 | Letter of Agreement between ALPA and United ("COVID Vaccinations"), dated May 25, 2021 |
| MEC/United MEC | United Airlines Pilots Master Executive Council of ALPA |
| MEC Grievance | MEC or group grievance ALPA filed alleging that United's COVID-19 vaccination requirement was a pilot qualification and not a matter subject to discipline. |
| Op. or Opinion | The Court's September 5, 2023 Opinion and Order [Dkt. # 51] |
| RLA | Railway Labor Act, 45 U.S.C. §§ 151-188 |
| Status Quo Grievances | Grievances filed by groups of individual pilots, joined by three Plaintiffs, alleging that United's vaccine mandate violated UPA, LOA 21-02, and RLA |
| United | United Airlines, Inc. |
| UPA | United Pilots Agreement, the CBA between United and ALPA |

## INTRODUCTION

On September 5, 2023, the Court dismissed Plaintiffs' Initial Complaint ("IC") for failing to state a plausible claim that Defendant Air Line Pilots Association, International ("ALPA") breached its duty of fair representation ("DFR") in its response to the COVID-19 vaccine mandate of United Airlines, Inc. ("United"). Nothing in Plaintiffs' proffered First Amended Complaint ("FAC") supports a different conclusion, and Plaintiffs' motion for leave to file the FAC accordingly should be denied as futile.

The two "substantive" changes in the FAC do not state a plausible claim. First, Plaintiffs make two DFR claims based on Letter of Agreement ("LOA") 21-02: (1) member ratification of the LOA was required; and (2) United breached the LOA by improperly designating certain airports as "vaccine destinations." These claims are outside the six-month limitations period, and Plaintiffs also fail to plead specific facts supporting their vaccine-destination claim or that that they suffered any harm. Second, Plaintiffs finally identify a provision of the ALPA-United collective bargaining agreement ("UPA") allegedly breached by the mandate (Section 1-A), but that section simply recognized ALPA as the pilots' collective bargaining representative. ALPA functioned in precisely that capacity in agreeing to UPA Section 21-K, which (as the Grievance Review Panel ("GRP") explained) permitted the mandate and reflected the practice at United.

The remaining FAC amendments are rhetorical and substantively duplicate the vaccine mandate claims previously rejected by the Court. Accordingly, the Court should deny leave to amend.

**PLAINTIFFS' ALLEGATIONS**

**I.      Allegations Common to the IC and the FAC**

Plaintiffs are United pilots discharged in November 2021 for violating United's COVID-19 vaccine mandate.  FAC ¶¶ 3-11, 47; IC ¶¶ 3-12, 47.  ALPA and United are parties to the UPA, which establishes terms and conditions of pilot employment.  FAC ¶¶ 14, 17; App. 2 (¶ 3), 8-72; IC ¶¶ 16, 20.[1]  The UPA addresses United's ability to change personnel policies:

> Company personnel policy which affects pilots shall not be changed without giving advance notice to the Association and affording them the opportunity to comment. Further, no change shall be made to any Company personnel policy which is contrary to any of the terms of this Agreement. [App. 65 (§ 21-K).]

**A.      LOA 21-02 and United's Subsequent Vaccine Mandate**

In May 2021, ALPA and United adopted LOA 21-02, which provided monetary incentives for vaccination, barred United from requiring vaccination during its term, and allowed United to designate airports as "vaccine destinations."  FAC ¶¶ 23-25; App. 2 (¶ 4), 73-79 (§§ B.1.a-d, B.4, D.1-4, 12.a-b), 43 (§ 3-D.1); IC ¶¶ 26-27.  Arbitration was available if the parties disagreed about a designated vaccine destination.  App. 79 (§ 12.c.).

On August 6, 2021, United announced that it would mandate COVID-19 vaccines for employees, including pilots, by September 27, and shortly thereafter provided the permitted

---

[1] The accompanying Appendix (consisting of a Declaration and cited documents) contains additional information supporting this Opposition, paginated with the prefix "A-" in the Appendix, and cited herein with the prefix "App." followed by the page number.  In that regard, this Opposition permissibly rests on the FAC's allegations and documents referenced therein that "are central to" the claims.  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *accord Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013).  The Court already considered the following documents in its earlier decision (Dkt. # 51 at 2 n.2) ("Opinion" or "Op."): the UPA, LOA 21-02, and the records concerning the Status Quo Grievances and the MEC Grievance.  The Appendix also authenticates a magazine article referenced in the proffered FAC (also referenced in the IC) and omits certain documents that became irrelevant in light of the Court's earlier ruling and the withdrawal of one Plaintiff from the case.

written notice terminating LOA 21-02 effective September 27.  FAC ¶¶ 33, 42; App. 2 (¶ 5), 79, 81; IC ¶ 33.

### B.    The Grievance Process Under the UPA

Pilots may file non-disciplinary grievances with United under the UPA and may appeal United's initial decision internally.  App. 3 (¶ 8), 50-51 (§ 17-A-(1-4, 7)).  Further appeals are to the System Board, the arbitral body established by the UPA.  App. 50 (§ 17-A-5).  The Board has jurisdiction over disputes arising from "interpretation" or "application" of the UPA and considers "any dispute properly submitted to it by the President of [ALPA] or by the Senior Vice President-Flight Operations[.]"  App. 59 (§ 18-C).

The UPA provides for a GRP when a pilot disputes ALPA's decision not to submit a non-disciplinary grievance to the Board.  App. 50-51 (§ 17-A-6).  After hearing from the grievant(s), the GRP may decide to submit that grievance to the Board, and the UPA accordingly extends applicable time limits.  *Id.* (§ 17-A-6-a).

The UPA also requires "just cause" to fire a pilot and creates a grievance process for such actions.  App. 48 (§ 6-D-1), 51-53 (§17-B).

### C.    The Status Quo Grievances

In August 2021, three of the nine Plaintiffs (Mackenzie, Williamson, and Gates) joined Status Quo Grievances alleging that United's vaccine mandate violated UPA Section 1-A and the RLA, 45 U.S.C. § 156.  FAC ¶ 35; App. 2-3 (¶ 6), 97-102, 110-14; IC ¶ 37.  The Grievances do not allege that United breached LOA 21-02 or improperly designated certain airports as vaccine destinations.  App. 97-102, 110-14.  ALPA did not support, and United denied, the Grievances. FAC ¶¶ 36, 40-41, 48; App. 3 (¶ 7), 103-04, 107-09, 115-16, 120-22; IC ¶¶ 38, 40, 42-43, 48.

Grievants appealed to the GRP, requesting arbitration. FAC ¶ 48; IC ¶ 48. After a two-day hearing, on March 11, 2022, the GRP declined that request. FAC ¶ 50; App. 3 (¶ 9), 123-29; IC ¶ 50. The GRP relied on the UPA's language and the practice at United:

> [United] could impose the vaccination requirement under the UPA, and any lawsuit alleging that United violated the RLA status quo obligation would be baseless. Furthermore, the Courts have rejected RLA claims challenging Covid-19 vaccination policies at Southwest and METRA on this basis. Also, when looking at specific language in the UPA, there is nothing within it that addresses vaccination mandates or limits [United] in that respect. Section 21-K recognizes that [United] may change personnel policies upon notice to ALPA, even though ALPA does not have to agree beforehand to any such changes. [United] has changed personnel policies in the past and has mandated the Yellow Fever vaccine for pilots operating to certain locations, among other policies. [App. 124-25.]

### D. The MEC Grievance

On September 28, 2021 (the day after United's mandate became effective), ALPA filed the MEC Grievance asserting that United lacked just cause to fire unvaccinated pilots because vaccination was a pilot qualification under the UPA and not a disciplinary matter. FAC ¶ 43; App. 3-4 (¶ 10), 130-32; IC ¶ 44. United denied the Grievance and ALPA appealed, but the Board denied the Grievance in February 2022. FAC ¶¶ 44, 49; App. 3-4 (¶ 10), 133-74; IC ¶ 49. The Board did not decide whether United could fire unvaccinated pilots. App. 173.

## II. The Dismissal of the Initial Complaint

On September 7, 2022, Plaintiffs sued ALPA in Texas for alleged breach of the DFR. The case was transferred to this Court, and ALPA moved to dismiss the IC under Rule 12(b)(6).

On September 5, 2023, the Court granted ALPA's motion, finding that the IC failed to state a claim upon which relief could be granted. Op. at 8-16. The Court noted that Plaintiffs' DFR theory was unclear and could be premised on ALPA's failure to challenge United's vaccine mandate as either: (1) a breach of the UPA; or (2) a unilateral change to pilot terms and conditions of employment while RLA Section 6 negotiations were pending. *Id.* at 9. With

respect to the first theory, the Court noted that Plaintiffs did not respond to ALPA's argument that it reasonably concluded that UPA Section 21-K's grant to United of the right to change personnel policy authorized United to impose the vaccine mandate. *Id.* at 10.

As for the second theory, the Court held that Plaintiffs had not adequately pled arbitrariness by ALPA because of Section 21-K and because a lawsuit seeking to enjoin the mandate would have been dismissed as a "minor dispute." *Id.* at 12. The Court further held that Plaintiffs had not alleged a plausible "discrimination" claim because ALPA's alleged motivations to help United secure federal funding to avoid pilot layoffs and pay cuts, as well as to protect pilot health, were legitimate. *Id.* at 13-14. The Court also noted that ALPA's MEC Grievance on behalf of unvaccinated pilots cut against a discrimination theory. *Id.*

## III. The First Amended Complaint's Two New Claims and Rehashed Old Allegations

The proffered FAC adds two new "substantive" allegations. First, the FAC alleges *as a cause of action* (instead of as factual background as in the IC) that ALPA improperly agreed to LOA 21-02 without member ratification and that the LOA created a "two-tiered compensation system" by providing financial incentives to pilots for vaccination and barring unvaccinated pilots from flying to vaccine destinations arbitrarily designated by United. FAC ¶¶ 24-25, 63; *compare* Dkt. # 49 at 6 n.1 (Plaintiffs' disavowal of DFR claim based on LOA 21-02). Plaintiffs do not identify improperly designated vaccine destinations or claim LOA 21-02 cost them any pay, instead baldly asserting that "pilots" had an increased "likelihood that they would suffer a financial penalty based on their vaccination status." FAC ¶ 25.

Second, Plaintiffs allege that the vaccine mandate violated UPA Section 1-A (entitled "Recognition"), which states:

> [ALPA] has furnished [United] evidence that a majority of the airline pilots and flight instructors employed by [United] have designated [ALPA] to represent them and in their behalf negotiate and conclude an agreement with [United] as to

hours of labor, wages and other employment conditions covering the pilots and flight instructors in the employ of [United] in accordance with the provisions of Title II of the Railway Labor Act, as amended and the certifications issued by the National Mediation Board in Case Nos. R-7305 and R-7306. [FAC ¶ 56; App. 9 (§ 1-A).]

Other changes in the FAC are non-substantive. First, Plaintiffs allege that, after United announced its vaccine mandate, ALPA "embarked on a program of collusive conduct with United" to impose the mandate, which violated "the RLA and [ALPA's] collective bargaining obligations," and was motivated "in full or in part" by a desire for United to maintain its federal funding. FAC ¶ 21. However, the IC alleged such collusion. IC ¶¶ 16 (ALPA supported the vaccine mandate to maintain federal funding), 42-43 (ALPA advised United that it would "not support the pilot mandate challenges" and did not do so), 55 (ALPA "collu[ded]" with United and "refus[ed] to pursue Plaintiffs' meritorious grievances against the new vaccine requirement"), 56 (ALPA "colluded with United to implement the vaccine mandate").

Second, the FAC alleges that ALPA advised the United MEC "to avoid interacting with ALPA members who objected to the vaccine mandate," thereby eliminating ALPA's role "in any way and at any level" in disputing the vaccine mandate. FAC at 10 n.2. That allegation simply rehashes allegations in the IC that ALPA did not support or initiate the Status Quo Grievances. IC ¶ 38 (ALPA advised Status Quo grievants that it "wanted nothing to do with [those] grievances and prohibited union staff from arguing on behalf of aggrieved pilots").

Finally, the FAC calls the September 2022 MEC Grievance a "sham" to "facilitate United's vaccine mandate" and "allow discipline to proceed against the unvaccinated pilots[.]" FAC ¶ 44. The IC contains similar allegations. IC ¶¶ 44, 46 (ALPA "deliberately misstated the vaccine mandate as a job qualification versus a condition of employment").

**ARGUMENT**

**I.    The Court Should Deny Leave to Amend Because Amendment Would Be Futile.**

"A district court is justified in denying an amendment if the proposed amendment could not withstand a motion to dismiss" pursuant to Rule 12(b)(6). *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985). In doing so, the Court may compare the IC and the FAC to determine if the latter's proposed amendments cure the former's deficiencies. *See, e.g.*, *Vorgias v. Mem'l Health Sys., Inc.*, 2012 WL 5947773, at *3 (N.D. Ind.); *Mac Naughton v. Harmelech,* 2018 WL 11249347, at *3 (N.D. Ill.) (directing plaintiff seeking leave to amend to file redline comparison and explain how amendments cure deficiencies). "[F]utile repleadings include restating the same facts using different language, reasserting claims previously determined, [and] failing to state a valid theory of liability." *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (internal citations omitted). In other words, the proffered FAC must state additional facts supporting a "plausible" claim that the IC did not. Op. at 8.

As explained below, the FAC fails this test. Its LOA 21-02 and UPA Section 1-A claims are futile, and its rhetorical changes do not distinguish it from the dismissed IC.

**A.    Plaintiffs' DFR Claims Based on LOA 21-02 Are Futile.**

**1.    The DFR Claims Are Untimely.**

A six-month limitations period governs DFR claims. *West v. Conrail*, 481 U.S. 35, 37-38 (1987); *Ranieri v. UTU*, 743 F.2d 598, 599-600 (7th Cir. 1984). Plaintiffs' claim concerning the lack of member ratification of LOA 21-02 is untimely and futile because the LOA became effective in May 2021 – almost 16 months before they sued. FAC ¶¶ 24-25.

Plaintiffs' claim based on United's alleged improper designation of vaccine destinations under LOA 21-02 also is untimely. That claim accrued on or before the LOA's termination on September 27, 2021, but Plaintiffs did not sue until September 2022. Further, the three Plaintiffs

who joined Status Quo Grievances did not allege that United violated the LOA or improperly

designated any vaccine destinations, and the proffered September 2023 FAC sets forth the first

claim in that regard. Plaintiffs accordingly may not now bring their vaccine destination claim.[2]

### 2. Plaintiffs Do Not State a Plausible Claim Concerning LOA 21-02.

Plaintiffs' conclusory allegations concerning vaccine destinations also fail to state a DFR

claim because they do not plausibly allege that United breached the LOA or that they were

harmed by it. Specifically, Plaintiffs: (1) identify no improperly designated vaccine destination;

(2) do not allege that they would have bid to fly there; and (3) do not assert lost pay because they

did not fly there (as opposed to somewhere else). Instead, they broadly allege that unidentified

"pilots" suffered an increased likelihood of losing pay based on vaccination status. FAC ¶¶ 25,

63. That does not state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (conclusory

allegations do not state a plausible claim); Op. at 9 (hybrid DFR claim requires showing that

---

[2] Any argument that the vaccine destination claim "relates back" to the IC would be futile. Such relation back occurs when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Here, the IC itself was untimely (insofar as it made allegations concerning LOA 21-02) because this suit was filed more than 11 months after the expiration of the LOA, and Plaintiffs did not toll the limitations period by filing or joining grievances over improperly designated vaccine destinations. Moreover, as the Court noted, the IC did "not assert a [DFR] claim premised on 'allegations regarding LOA 21-02.'" Op. at 9 n.2. Indeed, Plaintiffs repeatedly disavowed any DFR claim based on the LOA. Dkt. # 20 at 17-18 (ALPA's original motion to dismiss (in Texas) explaining basis for dismissing an LOA 21-02 claim); Dkt. # 24 at 8 n.3 (Plaintiffs' response that ALPA "misconstrues [their] case when it treats the allegations regarding LOA 21-02 as a separate DFR claim" because those allegations were "evidence that [ALPA] was discriminating against Plaintiffs and those like them, and that [ALPA] was committed to supporting vaccine requirements of United"); Dkt. # 47 at 2 n.3 (ALPA's motion to dismiss the IC in this Court stating Plaintiffs' position); Dkt. # 49 at 6 n.1 (Plaintiffs' reaffirmance of their position). Further showing that relation back is inapposite here are the differing proofs for the "vaccine destination" and "vaccine mandate" claims. The former requires Plaintiffs to show that United's vaccine designations breached the LOA and that ALPA acted in an arbitrary, discriminatory or bad faith manner in response. The latter requires proof that the mandate breached the UPA (and that ALPA breached the DFR with respect to it), not of United's prior vaccine destination designations.

employer breached CBA), 15 ("'A plaintiff cannot recover for a harmless breach of [DFR].'")
(quoting *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1180 (7th Cir. 1995)).

Moreover, Plaintiffs do not plead arbitrary, discriminatory, or bad-faith conduct with
respect to United's alleged breaches of LOA 21-02. They do not claim that they notified ALPA
of an improperly designated vaccine destination, filed grievances over it, or asked ALPA for
assistance on the issue. FAC, *passim*. ALPA cannot have acted "wholly irrationally" in such
circumstances. *ALPA v. O'Neill*, 499 U.S. 65, 78 (1991). With respect to "bad faith," Plaintiffs
identify no "substantial evidence of fraud, deceitful action or dishonest conduct" with respect to
the vaccine destinations. *Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. of Am. v.
Lockridge*, 403 U.S. 274, 299 (1971) (internal quotations omitted). Finally, Plaintiffs have not
pled a plausible discrimination claim, which requires them to show discriminatory conduct
"unrelated to legitimate union objectives" or based on Plaintiffs' unidentified "invidious" trait.
*Id.* at 301. As the Court previously held, ALPA's efforts to protect members' health is not an
improper discriminatory motive (Op. at 13-14), and securing extra pay for pilots in that process
also is not improper. *See also* Exec. Order No. 14042, 86 Fed. Reg. 50985 § 1 (Sept. 9, 2021)
(federal government vaccine mandate for federal contractors to "decrease the spread of COVID-
19" and to provide "adequate COVID-19 safeguards to [the] workers" of contractors).

**B.      The FAC Still Fails to Plausibly Allege that ALPA's Decision Not to
         Challenge the Vaccine Mandate Violated the DFR.**

**1.      Plaintiffs Fail to State a Plausible DFR Claim with Respect to
         United's Alleged Violation of the RLA's Status Quo Provisions.**

Plaintiffs continue to suggest that the vaccine mandate violated the "status quo"
provisions of RLA Section 6 and that ALPA had to sue or file a grievance to stop this alleged
statutory breach. FAC ¶¶ 14, 17, 28, 33, 58. Plaintiffs again fail to state a plausible claim.

First, a suit seeking an injunction would have failed because ALPA rationally (and correctly) concluded that no "major dispute" injunction was available. As noted previously (Dkt. # 47 at 6), RLA "major dispute" injunctions to bar employer actions are available only when the employer lacks an arguable basis in the CBA for its action. *Consol. Rail Corp. v. Ry. Lab. Execs. Ass'n*, 491 U.S. 299, 307, 312, 320 (1989) ("*Conrail*"). Here, ALPA rationally (and correctly) concluded that UPA Section 21-K gave United far more than an arguable basis for the vaccine mandate, and Plaintiffs still do not explain otherwise. *See* Op. at 12.[3]

Second, a DFR claim over a judicial injunction is time-barred because ALPA's failure to pursue such a claim occurred in 2021, more than six months before Plaintiffs filed suit.

Third, a grievance over the alleged RLA violation would have failed because the System Board lacked jurisdiction over that statutory claim. Far from allowing arbitration of claims based on RLA Section 6, the UPA limits the Board's jurisdiction to "grievances" and disputes arising out of "interpretation or application of any of the terms of this Agreement[.]" App. 59 (§ 18-C). Accordingly, a grievance based on the alleged RLA Section 6 violation would have been pointless, and ALPA could not have breached the DFR by not filing such a claim.

---

[3] Before 1989, courts stated that unions might be able to seek injunctions when the employer changed working conditions during RLA Section 6 negotiations. Op. at 9 (citing *Detroit & T.S.L.R. Co. v. UTU*, 396 U.S. 142, 153 (1969); *ALPA v. United*, 802 F.2d 886, 916 (7th Cir. 1986)). However, the Supreme Court's 1989 *Conrail* decision established that, as long as the employer has an arguable basis in the CBA for its challenged action that "changed" working conditions, a minor dispute would arise subject to adjustment board jurisdiction. *Conrail*, 491 U.S. at 319-20. *See also IBT Airline Div. v. Frontier Airlines, Inc.*, 628 F.3d 402, 406 (7th Cir. 2010) (RLA compels arbitration of minor disputes); *AFA v. Mesa Air Group, Inc.*, 567 F.3d 1043, 1049-50 (9th Cir. 2009) (reversing injunction in favor of union and holding that injunction did not lie against employer's alleged status quo violation during Section 6 negotiations because employer had arguable contractual basis for its action); *Airline Prof'ls Ass'ns of IBT, Local Union No. 1224 v. ABX Air, Inc.*, 274 F.3d 1023, 1028 (6th Cir. 2001) ("there is no requirement that the parties maintain the status quo pending board resolution of the [minor] dispute").

2.      **The FAC Does Not Plausibly Allege a DFR Claim Over ALPA's Decision Not to File or Support a Status Quo Grievance.**

a.      **Plaintiffs Do Not Plausibly Allege that United's Vaccine Mandate Breached the UPA.**

The Court's dismissal of the IC noted that "'[s]uccess in a hybrid contract/DFR suit depends on showing *both* the employer violated the contract *and* that the union did not represent the workers fairly.'" Op. at 9 (quoting *Cunningham v. ALPA*, 769 F.3d 539, 541 (7th Cir. 2014)). Accordingly, if the employer did not breach the CBA, the union's conduct is immaterial. *See DelCostello v. IBT*, 462 U.S. 151, 164-65 (1983); *Cunningham*, 769 F.3d at 541; *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1303-04 (7th Cir. 1992) (dismissing DFR claim, despite evidence of union's bad faith, because underlying grievance was meritless); *White v. Gen'l Motors Corp.*, 1 F.3d 593, 595 (7th Cir. 1993) ("employee cannot complain that the union breached its [DFR] in [not] process[ing] grievance" where "employee's underlying contractual claim lacks merit").

The FAC presents such a hybrid claim because it continues to assert that United's mandate breached the UPA. For the first time, Plaintiffs identify Section 1-A as the breached UPA provision. FAC ¶ 59.

This claim is meritless. Section 1-A states that ALPA represents United pilots to "negotiate and conclude an agreement with [United] as to hours of labor, wages and other employment conditions[.]" App. 9. The GRP explained in detail that ALPA functioned in precisely that capacity by agreeing to allow the vaccine mandate in UPA Section 21-K and the practice under it. United therefore could not have bypassed ALPA in violation of Section 1-A by mandating the vaccine.

Plaintiffs offer two responses. First, they assert that an ALPA magazine "editorial" stated that "vaccination requirements are an issue that must be bargained for and ultimately

agreed to by each ALPA pilot group[.]" FAC ¶¶ 37 (emphasis removed), 56; App. at 4 (¶ 11),

176. However, the referenced article (in the "Health Watch" section and entitled, "COVID-19

Variants and Their Implications for Airline Pilots") does not refer to or discuss any particular

pilot group's CBA. It accordingly does not show anything contrary to the GRP's conclusion that

the previously-negotiated UPA Section 21-K permitted the mandate. App. 176.

Second, Plaintiffs claim that MEC Chair Todd Insler "identified the connection between

the federal revenue and Defendant's acquiescence to the UAL vaccine mandate" and that the

GRP "followed [Insler's] direction." FAC ¶¶ 45, 50. This response proves nothing. It cites no

specific facts showing such direction, identifies no incorrect part of the GRP's decision, and

ignores that the GRP will hear matters only when ALPA earlier declined to submit a grievance to

the Board. App. 50-51 (§ 17-A-6), 59 (§18-C-2).

In sum, Plaintiffs' failure to plausibly allege that the vaccine mandate breached the UPA

makes the FAC futile because a hybrid claim requires them to show such a breach. *Supra* at 11.[4]

> **b.** **Plaintiffs Do Not Plausibly Allege Arbitrary, Discriminatory or Bad Faith Conduct by ALPA.**

Regardless of the availability of a judicial injunction against United's vaccine mandate or

United's breach of the UPA, the FAC still does not plausibly plead arbitrary, discriminatory or

bad faith conduct by ALPA.

> **i.** **The FAC Fails to Plausibly Plead Arbitrariness.**

The Court ruled that the IC did not plead ALPA's arbitrary conduct in breach of the DFR

---

[4] Plaintiffs also assert that ALPA could have intervened on pilots' behalf with respect to United's reasonable accommodation process based on UPA Sections 21-G (barring discrimination based on "creed") and 21-U (no UPA waiver of pilots' rights "under any applicable laws or regulations"). FAC ¶ 31; App. 68-69 (§ 21-U), 64 (§ 21-G). However, Plaintiffs do not assert a DFR claim based on these alleged violations and admit that they suffered no injury from them. FAC at 9 n.1, ¶¶ 52-65. These citations to UPA sections thus do not state a plausible claim.

because Plaintiffs ignored Section 21-K (and the GRP decision) and identified no UPA provision violated by United's vaccine mandate. Op. at 10. Plaintiffs' baseless citation to UPA Section 1-A does not alter this conclusion for the reasons stated above. ALPA cannot act "wholly irrationally" in not pursuing a non-existent contractual violation.

### ii.     The FAC Fails to Plausibly Plead Discrimination.

The FAC does not plausibly allege discrimination. Rather than claim that ALPA's decisions were based on an invidious characteristic or motivated by illegitimate interests, the amendments regarding ALPA's motive concern its purported "leadership bias" and desire to "curry favor" with United and unnamed "politically connected groups." FAC ¶ 60. These are not allegations of prohibited discrimination. "Bias" in favor of pilot health in the face of a worldwide pandemic was legitimate, not "invidious." Op. at 13-14. Plaintiffs also plead no facts supporting their allegation that ALPA was motivated to "curry favor" with United management, which also is belied by ALPA's MEC Grievance on Plaintiffs' behalf. Op. at 14. Further, as for "politically connected groups," the Court already has held that obtaining federal funds to support United's payroll was a legitimate aim. *Id.* at 13-14. That dooms any DFR discrimination theory. *Bishop v. ALPA*, 5 F.4th 684, 698 (7th Cir. 2021) (viable DFR claim requires that the union's *sole* motivation be illegitimate).

### iii.     The FAC Fails to Plausibly Allege Bad Faith.

The FAC alleges that ALPA colluded with United in handling issues arising from the vaccine mandate. FAC ¶¶ 21 ("ALPA embarked on a campaign of collusive conduct with United" to impose mandates to obtain federal funding), 31 (ALPA's handling of United's reasonable accommodation process was part of pattern of collusive conduct). However, the IC previously pled "collusion," and the Court found those claims implausible. First, the Court held that ALPA's support for federal funding to protect pilot jobs and pay was a legitimate union

motive, so the FAC's dressed-up allegation adds nothing.  Second, Plaintiffs plead no facts suggesting a conspiracy between ALPA and United or that ALPA concealed its position regarding the vaccine mandate from pilots, as necessary to allege the "fraud, deceitful action or dishonest conduct" required for a bad-faith DFR breach.  *Lockridge*, 403 U.S. at 299 (internal quotations omitted).

The FAC also attempts to plead bad faith by alleging that the MEC Grievance was a "sham," intended to support the vaccine mandate and permit discipline of unvaccinated pilots. FAC ¶ 44.  It alleges no facts supporting that theory; the MEC Grievance was processed in the usual way, with a two-day hearing, and decided by a neutral arbitrator (App. 133-74).  *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013) (affirming dismissal where "plaintiffs offer[ed] nothing to support their claim of bad faith apart from conclusory labels.").

Moreover, far from "refus[ing] to advocate for unvaccinated pilots" (FAC ¶ 64), ALPA and its MEC Grievance, if successful, would have prevented United's discharge of Plaintiffs. *See* App. 152 (arbitrator summarizing ALPA's position: "there is no basis to find that unvaccinated pilots who lacked qualification to fly [COVID-19 vaccine] restricted segments should be subject to discipline.").  Simply because Plaintiffs would have preferred ALPA to file a baseless status quo grievance instead does not state a DFR claim.  Op. at 12; *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953) ("The complete satisfaction of all who are represented is hardly to be expected.").

## II.  Plaintiffs Should Not Be Granted Leave to Attempt to Amend a Second Time.

The Court should not offer Plaintiffs the chance to seek leave to file another amended complaint.  Plaintiffs will have filed two oppositions to motions to dismiss, a complaint, a motion for leave to file an amended complaint, and a brief in support of leave to file an amended

14

complaint, and they still will have been unable to state a plausible claim. It would be pointless to offer them yet another opportunity to amend.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint without leave to replead.

Dated: October 27, 2023                   Respectfully submitted,

                                          By: */s/ Rami N. Fakhouri*

James K. Lobsenz (*pro hac vice*)         Rami N. Fakhouri
Joshua J. Ellison (*pro hac vice*)        Caleb A. Kennedy
AIR LINE PILOTS ASSOCIATION,              GOLDMAN ISMAIL TOMASELLI
  INTERNATIONAL                             BRENNAN & BAUM LLP
Legal Department                          200 South Wacker Drive
7950 Jones Branch Drive, Suite 400S       22nd Floor
McLean, VA 22102                          Chicago, IL 60606
Tel.: (703) 481-2423                      Tel.: (312) 681-6000
Fax: (703) 481-2478                       Fax: (312) 881-5191
*Jim.Lobsenz@alpa.org*                    *rfakhouri@goldmanismail.com*
*Joshua.Ellison@alpa.org*                 *ckennedy@goldmanismail.com*


*Attorneys for Defendant Air Line Pilots Association, International*

15