UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| KEVIN D. WICKSTROM, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:23-cv-02631 |
|  | ) ) | Honorable Matthew F. Kennelly |
|  | ) ) ) | PLAINTIFFS' REPLY IN SUPPORT OF PROPOSED AMENDED COMPLAINT |
| AIRLINE PILOTS ASSOCIATION INTERNATIONAL, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF PROPOSED AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(a)(2), motions for leave to amend complaints should be freely granted "when justice so requires." "Ordinarily…a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (holding that courts should grant leave to amend after granting a motion to dismiss unless "it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted."). Proposed amendments are considered futile "when the new pleading would not survive a motion to dismiss." *McDaniel v. Loyola Univ. Med. Ctr.*, 317 F.R.D. 72, 78 (N.D. Ill. 2016) (quoting *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013)). In the present matter, Plaintiffs should be

permitted to amend their Complaint because the proposed amendments are not futile for the reasons set forth herein.

"To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered to be plausible on its face "when the plaintiff pleads factual content that allows the court to draw a *reasonable inference* that the defendant is liable for the misconduct alleged." *Roberts*, 817 F.3d at 564 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis added). Plaintiffs' First Amended Complaint pleads sufficient facts that allow the court to draw a reasonable inference that Defendant violated the RLA and does not merely "recite the elements of a cause of action in a conclusory fashion." *Id*. The issues raised by Defendant—such as its interpretation of section 21-K of the CBA—are issues of fact, which cannot be properly resolved at this stage of litigation.

**I.    The Complaint Adequately Alleges that United Airlines Violated its Obligations Under the Collective Bargaining Agreement (CBA) and the Railway Labor Act (RLA), and that ALPA Knew About these Violations.**

Plaintiffs allege that ALPA breached its obligations under Section 1A of the CBA, requiring that ALPA represent them by failing to prevent, or at least challenge, United Airlines' vaccine mandate. *FAC*, at ¶ 56 ("The conduct alleged in paragraphs 21-22, 25-26, 28-30, 33, 42, and 46 either directly or indirectly violated the United Pilots Agreement (Section 1(a)) between Defendant and United, as well as the provisions of the RLA. Notwithstanding its earlier representation that the vaccine mandate would be a mandatory subject of collective bargaining before implementation, Defendant instead elected to not only ignore United's illegal actions, but to endorse and support them."). Moreover, the CBA, by its very language, incorporates the protections of the RLA. To argue that the CBA (an agreement between ALPA and United Airlines) effectively abandoned all

2

statutory protections under the RLA is inconsistent with the express terms of the CBA. Accordingly, a violation of the RLA status quo provisions is inherently a violation of the CBA.

Plaintiffs have alleged that United had a duty under the RLA to maintain the status quo following the lapse of the prior CBA, until a new CBA was finalized. *FAC*, at ¶ 17 ("At all times during the occurrence of the events noted in this Complaint, Defendant and United were operating under the terms of a lapsed [CBA]. Under these circumstances, all parties were required by the [RLA] to maintain the terms and conditions of the previous [CBA] until a new contract was signed"); ¶ 58 ("United was not permitted to make changes to rates of pay, rules, or working conditions while the change was being mediated and finalized—*i.e.*, United was required to maintain the 'status quo'"); ¶ 59 ("When United Airlines violated the [CBA] and RLA by unilaterally mandating the vaccine, Defendant had a duty to object on the basis that United changed the rates of pay and working conditions for unvaccinated pilots in particular."). Pursuant to that duty, United was not permitted to make changes affecting rates of pay, rules, or working conditions. *Id*. Accordingly, Plaintiffs' FAC plausibly alleges that United violated its obligation under the RLA when it unilaterally imposed the vaccine mandate—which had a substantial impact on the rates of pay and working conditions for unvaccinated employees in particular—prior to the finalization of a new CBA. *Id*.

As alleged by the First Amended Complaint, ALPA leadership knew that the mandate should have been, at the very least, bargained for prior to implementation. *FAC*, at ¶ 18 ("On May 28, 2020, Defendant advised Plaintiffs and the United pilot membership that they should expect United management to try to unilaterally alter the collective bargaining agreement with respect to working conditions as a result of the COVID-19 pandemic and called for a unified front to forestall United management efforts."). Despite initially advising Plaintiffs that they should expect United

3

Airlines to attempt to unilaterally alter the CBA as a result of the pandemic and calling for a unified front to forestall these efforts, Defendant failed to take any meaningful action in response to the mandate.[1] [2]

## II. The Complaint Properly Alleges Arbitrary, Discriminatory, and Bad Faith Conduct by ALPA.

### A. *Arbitrariness*

As alleged within the First Amended Complaint, arbitrary conduct is that which is "so far outside a wide range of reasonable as to be irrational" and demonstrates "fraud, deceitful action, or dishonest conduct." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotations and citations omitted); *Baxter v. United Paperworkers Int'l Union, Local 7370*, 140 F.3d 745, 747 (8th Cir. 1998) (citing *Washington v. Service Employees Int'l Union, Local 50*, 130 F.3d 825, 826 (8th Cir. 1997). Defendant's conduct, in which it blatantly and purposefully ignored its obligation to negotiate with United Airlines regarding the vaccine mandate, was wholly irrational.

Under the RLA, United Airlines was not permitted to make any changes to rates of pay, rules or working conditions while a new CBA was being mediated and finalized. Accordingly, United Airlines was required to maintain the status quo. United Airlines violated the RLA and CBA

---

[1] Defendant's argument that Plaintiffs' First Amended Complaint is futile on the basis that the union could not have obtained an injunction ignores the fact that injunction is not the only remedy. Injunction is the primary remedy in cases involving a major violation of the RLA. Plaintiffs are not alleging here that Defendant's conduct amounted to a major violation. In addition to an injunction, the union can force the subject matter of the change to the status quo, to a system adjustment board for binding arbitration.

[2] Defendant's argument that Plaintiffs' action was filed outside of the statute of limitations is also meritless. Plaintiffs raised the issue of United Airlines' RLA violation almost immediately after the implementation of the mandate. ALPA did not formally reject this argument until March 11, 2022, when Defendant's Grievance Review Panel, following MEC Chair Insler's direction, "denied Plaintiffs' grievance from moving forward to the system board of adjustment where the 'terms and conditions of employment' argument could be raised formally through the parties' grievance system." *FAC*, at ¶ 50. This lawsuit was initiated on September 7, 2022. [ECF 1]. Accordingly, this action was brought within statute of limitations.

by unilaterally mandating the vaccine mandate. Thereafter, ALPA violated its duty to fair representation under the RLA by failing to object to the implementation of the mandate, on the basis that the mandate changed the rates of pay and working conditions for unvaccinated pilots in particular. *FAC*, at ¶¶ 58-59. The arbitrariness of Defendant's conduct was underscored by its refusal to negotiate over the mandate *even after* the grievance system board of adjustments arbitrator determined that ALPA's attempt to define the mandate as a pilot qualification (versus a condition of employment) was legally insufficient. *FAC*, at ¶¶ 49-50 ("The arbitrator found that the vaccine mandate was not a 'pilot qualification' issue. The decision put Defendant on notice that the vaccine mandate was in fact a term or condition of employment and United's unilateral action violated Sec. 1 of the UPA and was subject to Section 3 or Section 6 arbitration under the [RLA].").

B. *Bad Faith*

A union acts in bad faith where it acts or fails to act due to an improper motive. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). As alleged by Plaintiffs, Defendant colluded with United Airlines in the implementation and enforcement of the vaccine mandate. *FAC*, at ¶ 57 ("Defendant colluded with United to implement the vaccine mandate, refused to challenge the mandate, and refused to represent pilots who were placed on unpaid leave or terminated as a result of the mandate.").

Although not alleged as a cause of action, ALPA's promulgation of LOA 21-02 is evidence of the union's collusion with Plaintiffs' employer. Prior to the improper promulgation of LOA 21-02, Defendant called for a unified front to forestall efforts by United Airlines to change working conditions due to the pandemic. *FAC*, at ¶18. This initial call to action demonstrated that Defendant was fully aware that any attempt by United Airlines to unilaterally change working conditions

would be a breach of the CBA and RLA. Notwithstanding this initial call for a unified front, Defendant later claimed that the vaccine mandate, without citing to any authority, was contractually permissible only two weeks after United Airline's CEO announced his expectation that a mandate would go into effect. *FAC*, at ¶ 20 ("Within two weeks of United CEO Kirby indicating that he expected mandatory workplace vaccinations to be in place, Defendant echoed Kirby's remarks in a memo to its membership on January 25, 2021. Defendant erroneously claimed that a vaccine mandate was contractually permissible (but offered no authority in the [CBA] in support)[.]").

Defendant then assisted United Airlines in instituting a discriminatory, two-tier system excluding unvaccinated pilots from various flight routes through LOA 21-02. *FAC*, at ¶ 23 ("…Defendant, via a Letter of Agreement (LOA 21-02), assisted United management in instituting a two-tier system limiting compensation for unvaccinated pilots…without submitting the LOA to United pilot membership as required"); ¶ 24 ("LOA 21-002 established a two-tier structure for pilots with United. Vaccinated pilots were allowed to fly virtually all routes within the system while unvaccinated pilots were limited to specific routes. Pilots who were unvaccinated began to suffer financial loss as their routes were limited and their options for taking on alternative routes were shut down by the terms of the LOA.").

Further, ALPA did nothing when United Airlines breached the terms of LOA 21-02 in (1) requiring employees to justify their requests for vaccine exemptions; (2) arbitrarily designating and increasing the number of airports and countries as vaccination destinations; (3) requiring employees to disclose their vaccination status; and (4) mandating the vaccination—all prior to the termination of LOA 21-02. *FAC*, ¶ 25 ("United breached the terms of LOA 21-02 by requiring all employees to justify their request for vaccine exemptions prior to the LOA's termination.

Defendant did not challenge this breach…did nothing to stop United management from arbitrarily designating and increasing the number of airports and countries as 'vaccination destinations' under the terms of LOA 21-02, thereby restricting the number of airports available to unvaccinated pilots and increasing the likelihood that they would suffer a financial penalty based on their vaccination status"); ¶ 26 ("LOA 21-02 also eliminated any requirement for pilots to divulge their vaccination status or to take the vaccine during the term of the letter agreement. Again, the union did nothing when United management began requiring such disclosures and mandating the shot before United management voided the agreement.").

Moreover, Defendant's assertion that there is no evidence of collusion or conspiracy between ALPA and United Airlines within the Complaint ignores the comment from United Airlines' CEO Scott Kirby that union concerns had been "socialized" rather than negotiated, and also ignores ALPA leadership's animosity towards unvaccinated members. *FAC*, at ¶ 27 ("On May 27, 2021 [UAL MEC] chairman Todd Insler told a member who raised an objection to the emergency use authorization status of the vaccine to 'go get a fucking shot and collect $4k or he can STFU"); ¶ 28 ("Senior United officials later stated that the vaccine mandate and leave without pay furlough were not negotiated with Defendant, but rather were 'socialized.'").

The above cited conduct demonstrates that ALPA's failure to challenge the mandate was done in bad faith and in collusion with United Airlines to implement the mandate. As alleged in Plaintiffs' First Amended Complaint, ALPA was "improperly motivated by its desire to represent the interests of its own leadership bias as opposed to its members to whom it had a legal duty to fairly represent, because Defendant sought to curry favor with United Airlines leadership and other politically connected groups who favored vaccine mandates." *FAC*, at ¶ 60.

7

C. *Discrimination*

Discriminatory conduct must be "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. Of Am. V. Lockridge*, 403 U.S. 274, 301 (1971). Contrary to Defendant's assertions otherwise, Plaintiffs' First Amended Complaint <u>does not</u> allege that the improper promulgation of LOA 21-02 was a violation of the RLA; rather, the promulgation of LOA 21-02 was <u>evidence</u> of Defendant's discriminatory behavior towards unvaccinated members. Moreover, ALPA leadership's aggressive campaign to single out unvaccinated pilots is further evidence of Defendant's discriminatory conduct.

LOA 21-02 established a discriminatory, two-tier structure under which Plaintiffs, and other unvaccinated pilots, were limited to specific routes. *FAC*, at ¶¶ 23-24. Accordingly, the promulgation of LOA 21-02 and ALPA leadership's campaign to single out unvaccinated pilots (*see, e.g.*, *FAC*, at ¶ 27), demonstrated that Defendant determined it would discriminate against unvaccinated pilots well before the implementation of the mandate.

## **CONCLUSION**

Plaintiffs have pleaded more than enough facts that allow the court to draw a reasonable inference that both Defendant and United Airline's conduct violated the Railway Labor Act. Accordingly, Plaintiffs respectfully request that the Court grant leave to file the First Amended Complaint.

Dated: November 10, 2023          Respectfully submitted,

<div style="margin-left: 3em;">

*/s/ Daniel K. Cetina*
Daniel K. Cetina (Illinois SBN: 6320423)
Walsh, Knippen & Cetina, Chartered
2150 Manchester Road, Suite 200
Wheaton, IL 60187
Telephone: (630) 462-1980
Facsimile: (630)-462-1984
dan@wkc-lawyers.com

</div>

8

/s/ John J. Michels, Jr.
John J. Michels, Jr. (Illinois SBN: 6278877)
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
lmichels@fedpractice.com

/s/ Carol A. Thompson
Carol A. Thompson (*Pro Hac Vice*)
Federal Practice Group
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
cthompson@fedpractice.com

/s/ Saroja C. Koneru
Saroja C. Koneru (*Pro Hac Vice*)
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Facsimile: (888) 899-6053

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of November 2023, I electronically transmitted the foregoing to the U.S. District Court Clerk's office using the CM/ECF System for filing.

s/ Daniel K. Cetina
Daniel K. Cetina (Illinois SBN: 6320423)
Walsh, Knippen & Cetina, Chartered
2150 Manchester Road, Suite 200
Wheaton, IL 60187
Telephone: (630) 462-1980
Facsimile: (630)-462-1984
dan@wkc-lawyers.com