IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN D. WICKSTROM, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 23 C 2631 |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kevin D. Wickstrom, Robert D. Williamson, Erik W. Wichmann, James R. Breitsprecher, Tony H. McKenzie, Jon A. Sterling, Forace Hogan, Christopher P. Gates, and John Ellis (collectively, Wickstrom), assert that their union, Air Line Pilots Association, International (ALPA), breached its duty of fair representation. The Court previously granted ALPA's motion to dismiss for failure to state a claim. *Wickstrom v. Air Line Pilots Ass'n, Int'l*, No. 23 C 2631, 2023 WL 5720989, at *7 (N.D. Ill. Sept. 5, 2023). In granting ALPA's motion, the Court stated that unless plaintiffs filed "a proposed amended complaint stating at least one viable claim over which the Court has jurisdiction, the Court will enter judgment in favor of defendant." *Id.*

Plaintiffs have moved for leave to file a first amended complaint (FAC) against ALPA. For the reasons stated below, the Court denies plaintiffs' motion and directs the Clerk to enter judgment against them.

## Background

The Court's previous order granting ALPA's motion to dismiss for failure to state a claim outlines the relevant history of this case. See id. at *1–2. To briefly reiterate: Wickstrom, an ALPA member and United pilot, was terminated for refusing to comply with United's COVID-19 vaccination policy announced on August 6, 2021. Prior to announcing the vaccine policy, United and ALPA adopted Letter of Agreement (LOA) 21-02. LOA 21-02 provided monetary incentives for pilots who received the vaccine while also restricting certain destinations to vaccinated pilots only.

Wickstrom alleges that ALPA's response to United's COVID-19 vaccination policy breached its duty of fair representation. His main contention centers on how ALPA addressed grievances to United's vaccine policy. Under the United Pilots Agreement (UPA)—the collective bargaining agreement between United and ALPA—pilots may file with United's Chief Pilot grievances concerning any United action, except for matters involving discipline or discharge. Pilots may appeal the Chief Pilot's decision to United's Senior Vice President-Flight Operations. If United denies the grievance, ALPA may appeal the denial to United's System Board of Adjustment, which includes a neutral arbitrator. If ALPA decides not to appeal from the denial of the grievance, the pilot may seek review of that determination from ALPA's MEC Grievance Review Panel.

On August 24, 2021, United pilots, including several of the plaintiffs in this case, filed non-disciplinary "status quo" grievances opposing the vaccine mandate. See First Am. Compl. ¶ 35. One of the contentions raised in these grievances was that because the collective bargaining agreement had lapsed, United's vaccine mandate violated the company's obligation under section 6 of the Railway Labor Act to maintain the status

2

quo. *See id.* ALPA did not assist with those grievances, and United denied the grievances. The pilots appealed to the Grievance Review Panel which, after a two-day hearing, denied the pilots' requests.

On September 28, 2021, ALPA filed an instant grievance "on behalf of approximately 12 pilots, including several Plaintiffs," before the System Board of Adjustment. First Am. Compl. ¶ 43. The instant grievance "challenge[d] [United's] termination of twelve (12) pilots for refusing to receive a COVID-19 vaccination" and asked the Board to consider whether United violated certain provisions of the UPA, whether the requirement to become vaccinated against COVID-19 was a pilot qualification within the meaning of the UPA, and whether United could discipline any pilot who did not meet the vaccination requirement. App. to Def. ALPA's Opp'n to Pls.' Mot. for Leave to Amend at 134–35.[1]

In February 2022, the Board denied the grievance. First, the Board determined that the vaccination requirement was not a pilot qualification under the meaning of the UPA, and thus it rejected ALPA's argument that the twelve pilots should have been placed on "not qualified" status rather than be terminated. *Id.* at 164. Based on this

---

[1] Under Federal Rule of Civil Procedure 10(c), "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Seventh Circuit has found that district courts may examine "[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Albany Bank & Tr. Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (noting that Seventh Circuit precedent serves as an "exception to Rule 12(b)" that "follow[s] from Rule 10(c)" and "allow[s] the defendant to submit the document to the court, and the court to consider it, without need for conversion to [a motion for summary judgment]").

determination, the Board concluded that United had not violated the relevant section of the UPA when it opted to terminate the twelve pilots at issue rather than place them on non-qualified status. *Id.* at 173. The Board found that the UPA did not "preclude [United] from using the discipline process for violation of its COVID-19 vaccination policy." *Id.*

Now seeking leave to file a first amended complaint, Wickstrom largely reiterates the facts alleged in his initial complaint. After parsing the two documents and comparing their contents, the Court has determined that the proposed FAC alleges three new facts to support the claim that ALPA breached its duty of fair representation.

The first addition involves LOA 21-02. Wickstrom alleges:

> LOA 21-02 established a two-tier structure for pilots within United. Vaccinated pilots were allowed to fly virtually all routes within the system while unvaccinated pilots were limited to specific routes. Pilots who were unvaccinated began to suffer financial loss as their routes were limited and their options for taking on alternative routes were shut down by the terms of the LOA.

First Am. Compl. ¶ 24.

Second, Wickstrom newly alleges:

> As part of its [reasonable accommodation process], United began illegal inquiries into the religious practices of its employees who claimed religious exemptions from the vaccine mandate. This included Defendant's members. Although the United Pilots' Agreement (Sec. 21-U and 21-G) contained a specific provision allowing the union to intervene on a pilot's behalf regarding matters of discrimination and violations of federal law, Defendant continued to take a hands-off stance in the fact of these violations.

*Id.* ¶ 31.

Third, Wickstrom newly alleges:

> The conduct alleged [in the FAC] either directly or indirectly violated the United Pilots Agreement (Section 1(a)) between Defendant and United, as

4

> well as the provisions of the [Railway Labor Act]. Notwithstanding its earlier representation that the vaccine mandate would be a mandatory subject of collective bargaining before implementation, Defendant instead elected to not only ignore United's illegal actions, but to endorse and support them.

*Id.* ¶ 56.

## Discussion

In the proposed FAC, Wickstrom again asserts a single claim alleging that ALPA breached its duty of fair representation under the Railway Labor Act, 45 U.S.C. §§ 151, 156. ALPA contends that the Court should deny Wickstrom leave to amend because his proposed FAC still does not supply facts that plausibly support a claim for relief and thus any amendment would be futile.

Federal Rule of Civil Procedure 15 outlines when and how amended and supplemental pleadings may be filed. Rule 15(a) typically allows a party leave to amend its pleading "once as a matter of course" before trial. Fed. R. Civ. P. 15(a). Courts should deny leave to amend following the granting of a motion to dismiss only if "it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). An amendment is futile if it "restat[es] the same facts using different language, reassert[s] claims previously determined, fail[s] to state a valid theory of liability, and [is unable] to survive a motion to dismiss." *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (internal citations omitted).

The Court finds that granting leave to amend would be futile. As explained in more detail below, Wickstrom's proposed FAC alleges only three new facts (outlined above) while restating the originally-pleaded facts using different language. The new factual allegations do not nudge Wickstrom's claim across the line to plausibility, and

5

therefore the claim still would not survive a motion to dismiss. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A. **Duty of fair representation**

"A union breaches a duty of fair representation only if its actions are arbitrary, discriminatory, or in bad faith." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). Plaintiffs contend that ALPA breached its duty of fair representation by acting arbitrarily, discriminatorily, and in bad faith.

1. **Arbitrariness**

"A union's actions are arbitrary only if the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Neal*, 349 F.3d at 369. A court determines whether a union's actions are arbitrary under an objective standard. *Id.* This is an "extremely deferential standard," and courts may not substitute their own judgment for that of the union "even if, with the benefit of hindsight, it appears that the union could have made a better call." *Id.* (citation and quotation marks omitted). Mere negligence, "even in the enforcement of a collective bargaining agreement," is not sufficient. *Id.* (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372–73 (1990)).

Regarding its handling of member grievances, "a union may not arbitrarily ignore meritorious grievances or process them in a perfunctory fashion." *Neal*, 349 F.3d at 369 (quoting *Vaca*, 386 U.S. at 191). A union is not required to take all member grievances to arbitration. *Neal*, 349 F.3d at 369 (citing *Vaca*, 386 U.S. at 191). Rather, a union "must provide some minimal investigation of employee grievances," the thoroughness of

6

which "depends on the particular case." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). "[O]nly an egregious disregard for union members' rights constitutes a breach of the union's duty." *Id.* (citation and quotation marks omitted). To survive a motion to dismiss for failure to state a claim, a plaintiff "must include enough details about the subject-matter of the case to present a story that holds together." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 470 (7th Cir. 2020) (citation and quotation marks omitted).

Wickstrom fails to present such a story. The Court previously determined that Wickstrom failed to plausibly allege that ALPA behaved arbitrarily. *See Wickstrom*, 2023 WL 5720989, at *5–6. The new facts offered in the proposed first amended complaint, noted above, do not alter that determination.

The thrust of Wickstrom's argument remains the same: ALPA failed to challenge United's vaccine mandate. Specifically, Wickstrom contends that ALPA acted arbitrarily because it "failed to challenge [United's vaccine] mandate by filing a status quo grievance." First Am. Compl. ¶ 42. But ALPA did file an "instant grievance on behalf of approximately 12 pilots, including several Plaintiffs." *Id.* ¶ 43. In this grievance, as discussed earlier, ALPA challenged United's termination of twelve pilots who refused to receive a COVID-19 vaccination and took the position that the vaccine requirement was a pilot qualification, rather than a change in working conditions, and therefore refusal to receive the vaccine could not be grounds for termination. *See* App. to Def. ALPA's Opp'n to Pls.' Mot. for Leave to Amend at 149–54; *see also id.* ¶ 43 (alleging that, in filing the instant grievance, "[t]he union took the position that it would not challenge the vaccine mandate as a violation of the collective bargaining agreement, but rather

7

requested that the company treat unvaccinated pilots as lacking qualification and therefore subject to limited discipline").

The fact that ALPA took this step puts the lie to the plaintiffs' contention that ALPA handled the grievances in a perfunctory manner or egregiously disregarded union members' rights. Rather, the above facts taken from the FAC and documents attached to ALPA's motion reflect that ALPA made a discretionary decision on how to address the vaccine mandate. When deciding how to proceed with a member grievance, the union may consider "such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer." *Neal*, 349 F.3d at 369. In electing to file an instant grievance, ALPA likely believed that this was the best allocation of its resources and/or the best way to meet the needs of all its members. The important point is that Wickstrom's amended complaint does not supply facts that permit a plausible inference that ALPA chose to file the instant grievance, rather than the status quo grievance, because it was addressing his complaint in a perfunctory manner or egregiously disregarded his rights.

Wickstrom further contends that ALPA's actions were arbitrary because after the System Board of Adjustment arbitrator "found that the vaccine mandate was not a 'pilot qualification' issue," ALPA failed to "challenge the mandate as a term or condition of employment." First Am. Compl. ¶¶ 49–50. Instead, according to the FAC, ALPA's Grievance Review Panel "denied Plaintiffs' grievance from moving forward to the system board of adjustment where the 'terms and conditions of employment' argument could be raised formally through the parties' grievance system." *Id.* ¶ 50.

Wickstrom's argument is not persuasive. The Grievance Review Panel

conducted a hearing over two days that consisted of formal presentations of the merits of the grievance, a question-and-answer session, and multiple sessions of deliberations by the panel. According to the panel's decision, it determined that United "could impose the vaccination requirement under the UPA, and any lawsuit alleging that United violated the RLA status quo obligation would be baseless." App. to Def. ALPA's Opp'n to Pls.' Mot. for Leave to Amend at 124. Even taking plaintiffs' allegations as true, ALPA provided well more than the required "minimal investigation" into Wickstrom's grievance following the clarification by the System Board of Adjustment arbitrator. Given the deferential standard granted to ALPA's decision in this context, the Court cannot find that ALPA acted arbitrarily in addressing Wickstrom's grievance. In sum, Wickstrom has not alleged facts that plausibly support a contention that ALPA's decision to not take his *specific* grievance to arbitration, after a two-day hearing, was arbitrary. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013) ("[D]eclining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation.").

In sum, the Court finds that Wickstrom has not sufficiently alleged facts that plausibly show ALPA breached its duty of fair representation by acting arbitrarily in addressing his grievances.

### 2. Discrimination and bad faith

A court's determination of whether a union acted discriminatorily or in bad faith involves a subjective inquiry "and requires proof that the union acted (or failed to act) due to an improper motive." *Neal*, 349 F.3d at 369. Mere suggestion by the plaintiffs that the union "may have failed to pursue grievances on their behalf for improper

9

reasons" is insufficient without more. *Id.* As the Seventh Circuit has noted, "unions often must make decisions that distinguish among different categories of employees," which may at times mean that the "interests of individual employees sometimes may be compromised for the sake of the larger bargaining collective." *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 398 (7th Cir. 2018). At this phase, plaintiffs must plausibly allege facts that show that ALPA's actions were fraudulent, deceitful, or dishonest. *See id.*; *see also Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 299 (1971).

Wickstrom alleges throughout the proposed FAC that ALPA colluded with United to enforce the COVID-19 vaccination policy. *See* First Am. Compl. ¶¶ 21, 31, 57, 62, 64. But in making these allegations, Wickstrom fails to put forth any facts that plausibly support a finding that ALPA acted with an improper motive in addressing United's vaccination policy. The majority of Wickstrom's allegations are wholly conclusory statements ascribing the label of "collusion" to ALPA's actions without saying much else. More to the point, however, the Court already determined that the facts alleged in the initial complaint were not sufficient to plausibly allege that ALPA breached its duty of fair representation by acting in a discriminatory manner or in bad faith. *See Wickstrom*, 2023 WL 5720989, at *6–7. Considering the additional facts alleged in the proposed FAC, the Court again finds that Wickstrom has not plausibly alleged that ALPA's actions were discriminatory or taken in bad faith.

In the proposed FAC, Wickstrom alleges that "[a]lthough the United Pilots' Agreement (Sec. 21-U and 21-G) contained a specific provision allowing the union to intervene on a pilot's behalf regarding matters of discrimination and violations of federal

10

law," ALPA took a "hands-off stance." First Am. Compl. ¶ 31. Wickstrom contends that this "is yet another example of ALPA's collusive conduct." *Id.* ¶ 31, n.1. This allegation is the type of "mere suggestion" that the court found insufficient in *Neal*, and it is no more effective here. To support a claim of bad faith, Wickstrom must plausibly allege "fraud, deceitful action or dishonest conduct." *Lockridge*, 403 U.S. at 299. The allegation that the UPA allowed ALPA to intervene on the pilot's behalf, but that ALPA did not intervene, is not sufficient to plausibly allege fraudulent, deceitful, or dishonest conduct without more.

Wickstrom next contends that ALPA acted in bad faith by colluding with United "to impose vaccine mandates on its workforce in full or in part to maintain federal funding." First Am. Compl. ¶ 21. Putting aside that this allegation is wholly conclusory, it also fails to plausibly show that ALPA acted in bad faith. A desire to maintain federal funding—if that is what motivated ALPA—does not suggest an improper motive because, as the Court previously noted, "preventing pilot layoffs and pay cuts are legitimate union purposes, as is protecting ALPA's members' health." *Wickstrom*, 2023 WL 5720989, at *6.

Wickstrom further alleges that ALPA gave members incorrect advice regarding United's religious accommodations process. These allegations fail to plausibly state a claim for the same reason the Court previously determined: at no point in the proposed FAC does Wickstrom allege that he sought or wished to seek a religious exemption under United's vaccine mandate. Therefore, even if ALPA's incorrect advice constituted a breach of the duty of fair representation, any such breach was harmless. A "plaintiff cannot recover for [a] harmless breach of duty of fair representation." *Garcia*, 58 F.3d

11

at 1180.

Wickstrom next alleges that ALPA "fail[ed] to follow its own policies that required member ratification of LOAs" and that this is evidence of its "collusion with United to not oppose an alternation to the company's basic employment conditions." First Am. Compl. ¶ 62.[2] Wickstrom contends that the promulgation of LOA 21-02 is one link in a chain of events that shows ALPA's bad faith. Specifically, Wickstrom alleges that ALPA initially "advised Plaintiffs and the United pilot membership that they should expect United management to try to unilaterally alter the collective bargaining agreement with respect to working conditions as a result of the COVID-19 pandemic and called for a united front to forestall United management efforts." *Id.* ¶ 18. But then, according to Wickstrom, ALPA changed its tune and "erroneously claimed that a vaccine mandate was contractually permissible." *Id.* ¶ 20. All of this was done, Wickstrom contends, because ALPA and United wanted "in full or in part to maintain federal funding." *Id.* ¶ 21. As a result of this "collusion," Wickstrom alleges, ALPA "assisted United management in instituting a two-tier system limiting compensation for unvaccinated pilots," causing "[p]ilots who were unvaccinated . . . to suffer financial loss." *Id.* ¶¶ 23–24.

Wickstrom's allegations do not support a plausible contention that ALPA acted fraudulently, deceitfully, or dishonestly. Though ALPA appears to have changed its position on the vaccine mandate, Wickstrom does not allege specific facts that show

---

[2] Wickstrom makes clear that he contends that "ALPA's promulgation of LOA 21-02 is evidence of the union's collusion with Plaintiff's employer" and that he does not allege ALPA's failure to present LOA 21-02 for member ratification as a basis for his claim. Pls.' Reply in Supp. of Proposed Am. Compl. at 5.

that it acted due to an improper motive as opposed to "considering the larger bargaining collective." See *Bishop*, 900 F.3d at 398; see also *Bishop v. Air Line Pilots Ass'n, Int'l*, 5 F.4th 684, 698 (7th Cir. 2021) (affirming the grant of summary judgment because, though plaintiffs did identify a "specific misrepresentation" made by ALPA to justify adopting a policy, this misrepresentation was not evidence that the "*sole* motivation in adopting [the policy] was discriminatory or in bad faith").

All other allegations in the proposed FAC have previously been addressed by the Court and found not to sufficiently allege that ALPA acted fraudulently, deceitfully, or dishonestly. See *Wickstrom*, 2023 WL 5720989, at *6–7. The Court's analysis of these allegations remains unchanged based on the FAC. In sum, the Court finds that Wickstrom has not plausibly alleged that ALPA breached its duty of fair representation by acting discriminatorily or in bad faith.

## Conclusion

The Court concludes that Wickstrom has again failed to allege a plausible claim that ALPA breached its duty of fair representation. For this reason, his proposed amendment would be futile, and the Court therefore denies his motion for leave to amend [dkt. no. 52]. At this point, Wickstrom has had a sufficient opportunity to state a viable claim against ALPA, and he has been unable to do so. The Court therefore directs the Clerk to enter judgment stating: This case is dismissed with prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 11, 2024